# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **DANA ALBRECHT,** ) | |
| ) | |
| **Plaintiff** ) | |
| **v.** ) | **Civil No. 1:25-cv-10438-ADB** |
| ) | |
| **CITY OF NEWBURYPORT,** ) | |
| ) | |
| **NEWBURYPORT POLICE DEPARTMENT,** ) | |
| ) | |
| **LT. RICHARD J. SIEMASKO, solely in his** ) | |
| **official capacity as the records access officer** ) | |
| **of the Newburyport Police Department and** ) | |
| **his successors in office,** ) | |
| ) | |
| **Defendants.** ) | |

---

## AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY, INJUNCTIVE AND EQUITABLE RELIEF

---

**TABLE OF CONTENTS**

# Table of Contents

TABLE OF CONTENTS..............................................................................2

INTRODUCTION...................................................................................4

PARTIES...........................................................................................4

JURISDICTION AND VENUE...................................................................5

FACTS PLEAD....................................................................................5

    I. Background..................................................................................5

    II. The Massachusetts POST Commission................................................8

    III. Officer Patrick Szymkowski..........................................................8

        Excessive and Improper Use of Force with Verbal Threats to Kill Detainees....8

        Gross Violation of Department Policy – Dissemination of Official Information 9

        Violation of Domestic Violence & Criminal Harassment Policy (VWA-2).......10

        May 30, 2018 – Ofc. Szymkowski's First Retaliatory Filing for a Civil
Protective Order Against Destinie Berard..............................................11

        June 6, 2018 – Disciplinary Action for Prior Unauthorized Dissemination of
Confidential Information.................................................................12

        June 13, 2018 – Ofc. Szymkowski's Second Retaliatory Filing for a Civil
Protective Order Against Destinie Berard..............................................14

        June 18-19, 2018 – Ofc. Szymkowski's Suspension Without Pay...............14

        July 11, 2018 – New Hampshire Circuit Court Hearing............................15

        Later New Hampshire criminal proceedings against Destinie Berard..........16

    IV. Public Records Request, Denial, and Retaliatory Threat..........................18

STANDING.......................................................................................20

    A. Plaintiff's Standing Under Article III of the U.S. Constitution..................20

    B. Plaintiff's Standing Under the First Amendment Petition Clause..............21

    C. Third-Party Standing – On Behalf of the Indigent Defendant...................21

    D. Comparison to New Hampshire's Broader Standing Doctrine..................22

    E. Conclusion...............................................................................22

MATTERS OF LAW PLEAD COMMON TO ALL COUNTS..............................23

CAUSES OF ACTION..........................................................................25

COUNT I – Violation of Mass. Gen. Laws ch. 66, § 10...................................25

COUNT II – Violation of the First Amendment...........................................26

COUNT III – Violation of the First Amendment.........................................28

COUNT IV – Violation of the Fourteenth Amendment................................29

COUNT V – VIOLATION OF 42 U.S.C. § 1983 (Municipal Liability – Monell Claim)...........................................................................................31

JURY TRIAL DEMAND............................................................................33

PRAYER FOR RELIEF...............................................................................34

CERTIFICATE OF SERVICE.....................................................................35

## INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the City of Newburyport, the Newburyport Police Department, and Senior Lieutenant Richard J. Siemasko, Esq., for violating the First and Fourteenth Amendments to the U.S. Constitution.

2. Defendants have unlawfully chilled Plaintiff's constitutionally protected right to seek public records under Massachusetts law by issuing a retaliatory and baseless threat of criminal prosecution, falsely suggesting that Plaintiff's lawful request for a police report might constitute a violation of a restraining order.

3. Plaintiff seeks:

   • A declaration that Defendants' conduct was unconstitutional.

   • An injunction prohibiting Defendants from issuing similar retaliatory threats against public records requesters.

   • The production of any remaining records requested by Plaintiff.

   • Reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

## PARTIES

4. Plaintiff Dana Albrecht is a resident of Nashua, New Hampshire and a member of the public who lawfully sought records under Mass. Gen. Laws ch. 66, § 10.

5. Defendant City of Newburyport is a municipal corporation in Massachusetts and is responsible for the actions of the Newburyport Police Department.

6. Defendant Newburyport Police Department[1] is a municipal law enforcement agency within Newburyport, Massachusetts, and an instrumentality of the City of Newburyport.

---

1    The Police Department is named solely for purposes of clarity in pleading. *See* ECF No. 18.

7. Defendant Senior Lieutenant Richard J. Siemasko, Esq. is a police officer employed by the Newburyport Police Department. At all times relevant, he was acting under color of state law and in his official capacity.

## JURISDICTION AND VENUE

8. This action arises under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

9. Declaratory relief is authorized by 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

10. Defendants are located within the Commonwealth of Massachusetts and/or perform official duties within the Commonwealth of Massachusetts. This Court, accordingly, has personal jurisdiction over the Defendants.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Newburyport, Massachusetts, which is within the jurisdiction of this Court.

## FACTS PLEAD

### I. Background

12. In a just society, activists, journalists, and legal advocates who promote government transparency through lawful public records requests should be applauded—not punished. Yet, as events in New Hampshire and now Massachusetts show, that is not always the case.

13. Consider Laurie Ortolano, a public records activist in Nashua, New Hampshire. Her persistent efforts to obtain government records led to major transparency reforms. She was honored with the 2023 First Amendment Award by the Nackey S. Loeb School of Communications[2] and prevailed in a landmark New Hampshire Supreme Court decision clarifying public records access. See *Ortolano v. City of Nashua*, 176 N.H. 175 (2023).[3]

---

2   See https://loebschool.org/blog/2023firstamendmenthonor
3   Plaintiff authored an *amicus* brief in support of Ms. Ortolano on appeal by the City of Nashua.

14. Despite these accomplishments, Ortolano became the target of retaliation. Her federal civil rights lawsuit, *Ortolano v. Bolton*, No. 1:21-cv-00748-LM (D.N.H.), alleges that municipal officials arrested her in retaliation for her activism. Her First Amendment claim has survived both motions to dismiss and summary judgment and is now proceeding to trial.[4]

15. Plaintiff Dana Albrecht is now facing similar retaliatory conduct—this time in Massachusetts. Like Ortolano, he is a longtime public records advocate. He has submitted numerous lawful requests under state and federal law seeking information on official misconduct, including misconduct by Salisbury Police Officer Patrick Szymkowski.

16. In 2024, Plaintiff was assisting a criminal defendant, Ms. Destinie Berard, in pending proceedings in New Hampshire.[5] Acting under N.H. Rev. Stat. § 311:1 as a non-attorney representative, Plaintiff submitted a routine public records request to the Newburyport Police Department on July 11, 2024.[6] The request sought police reports concerning a prior arrest of Ms. Berard by the Newburyport Police.[7] It did not disclose that Plaintiff was acting on her behalf.

17. Defendant Senior Lieutenant Richard J. Siemasko is the records access officer for the Newburyport Police Department pursuant to Mass. Gen. Laws ch. 66, § 10(6A).

18. On August 6, 2024, the Department issued a written denial signed by Lt. Richard Siemasko (MA BBO #662544), Newburyport's designated Records Access Officer. The denial cited statutory exemptions and added the following language:

> **If you are acting as her agent or representative that would be a 3rd party contact violation of the restraining order.**

---

4  Jury Selection/Trial set for two week period beginning 6/17/2025 at 09:30 AM before Chief Judge Landya B. McCafferty. Final Pretrial / Status Conference set for 6/5/2025 at 03:00 PM before Chief Judge Landya B. McCafferty.

5  See *State of New Hampshire v. Destinie L. Berard*, No. 441-2024-CR-00353 (N.H. 10th Cir. Ct., Dist. Div., Hampton Mar. 18, 2024).

6  See Exhibit 3.

7  See Exhibit 6.

19. Plaintiff understood this statement as a threat—issued under color of law—suggesting that lawful access to public records could itself give rise to criminal prosecution. The message was vague, intimidating, and calculated to deter further advocacy.

20. Worse still, the Department's warning came despite a May 20, 2024 ruling by the Massachusetts Supervisor of Records in SPR24/1359, addressed directly to Lt. Siemasko, which ordered disclosure of substantially the same records to Ofc. Patrick Szymkowski. That binding determination was ignored.[8]

21. Plaintiff did not originally disclose that he was acting on Ms. Berard's behalf because the Department's warning *explicitly* tied potential criminal liability *to that very fact*. Only later, after appearing on her behalf at trial in the New Hampshire state courts under N.H. Rev. Stat. § 311:1, did Plaintiff realize that further silence risked undermining his standing and credibility.

22. The facts pleaded here mirror the same themes present in Ortolano's case: public records activism punished through intimidation and retaliation. While the legal doctrines may differ, the moral stakes are the same: a government that punishes its critics and threatens those who seek the truth cannot be permitted to evade constitutional scrutiny.

23. In many years of public records advocacy, Plaintiff has never before received a response to a records request that implied criminal consequences. This was no routine denial. It was a targeted attempt to chill protected advocacy, couched in vague legalese and official authority.

24. Plaintiff's request was lawful. He had every right—individually and as Ms. Berard's authorized non-attorney representative—to seek records concerning a police officer's prior conduct. Indeed, other municipalities, such as Salisbury, Massachusetts and Hampton, New Hampshire, promptly produced responsive documents without protest or threats.

25. The Newburyport Police Department's response was an outlier—and an abuse of power. Rather than comply with an existing binding order from the Supervisor of Records, the Department recycled discredited legal arguments and added a threat of criminal prosecution.

---

8   See Exhibit 4.

26. This case is not about a bureaucratic misunderstanding. It is about how local government weaponized public records procedures to silence those who seek transparency and accountability. Plaintiff seeks relief not just for himself, but to vindicate the principle that lawful inquiry must never be punished with threats of criminal liability.

## II. The Massachusetts POST Commission

27. The Massachusetts POST Commission was established under Chapter 253 of the Acts of 2020, titled *An Act Relative to Justice, Equity and Accountability in Law Enforcement in the Commonwealth*, codified in part at Mass. Gen. Laws ch. 6E. The POST Commission serves as the statewide law enforcement licensing and disciplinary authority, responsible for certifying police officers and maintaining records of sustained misconduct allegations.

28. The Commonwealth of Massachusetts exercises jurisdiction over all law enforcement officers employed within its borders, including officers of municipal police departments. The POST Commission database is an official government record documenting sustained disciplinary actions against Massachusetts law enforcement officers, publicly available pursuant to the statutory transparency requirements of Mass. Gen. Laws ch. 6E, § 10.

## III. Officer Patrick Szymkowski

### Excessive and Improper Use of Force with Verbal Threats to Kill Detainees

29. Since 2012, Massachusetts Police Officer Patrick Szymkowski has shown a disturbing disregard for appropriate use of force.

30. On June 9, 2012, Ofc. Szymkowski escalated a routine arrest by choking Mr. Bruce Brown, who was restrained and posed no physical threat.[9]

31. Ofc. Szymkowski applied an unauthorized neck hold, pressing Brown against a wall under the pretense of preventing spitting – despite admitting he had observed neither spitting nor a credible threat.

---

9    Cf. *Commonwealth v. Bruce Brown*, No. 1222CR000988 (Mass. Dist. Ct. Newburyport filed June 11, 2012).

32. Ofc. Szymkowski further threatened Brown by stating to him "shut up, or I'm going to kill you."

33. Ofc. Szymkowski's choke hold left visible bruises on Brown's neck.

34. Brown was taken to Anna Jaques Hospital for evaluation of injuries sustained as a result of Ofc. Szymkowski's rough handling.

35. Detective Lieutenant Dana J. Pagley of the Internal Affairs Section of the Massachusetts State Police was assigned to conduct an an internal affairs investigation (#12-0037).

36. The investigation resulted in a **sustained complaint** of improper use of force by Ofc. Szymkowski .

37. The Massachusetts Peace Officer Standards and Training (POST) Commission's Law Enforcement Officer Disciplinary Records database (POST Case No. A-00004032) indicates that on June 18, 2012, in Salisbury Police Department Internal Affairs case IA-2-2012, Officer Patrick Szymkowski received a disciplinary sanction of loss of time off for "Use of excessive, non-deadly force."

### Gross Violation of Department Policy – Dissemination of Official Information

38. In 2014, Ofc. Szymkowski disclosed photographs of one or more individuals[10] arrested by the Salisbury Police Department to an outside civilian without authorization to do so.

39. The Salisbury Police Department later determined (in 2018)[11] that the unauthorized disclosure constituted a **"gross violation of department policy,"** specifically violating the **Department Code of Conduct and Responsibility Policy (DISC-1),** including but not limited to a violation of **Section G, Public Statements, Subsection 4: Dissemination of Official Information.**

40. The policy states:

---

10  Cf. *Commonwealth v. Anna Chikosi*, No. 1422CR002032 (Mass. Dist. Ct. Newburyport filed Dec. 17, 2014)

11  *See* ¶¶56-64, *infra*.

> (a) **Subsection (a):** *Employees shall treat as confidential that information which is confided to them personally in the course of their official duties. They shall disclose such information only as required in the proper performance of their duties.*
>
> (b) **Subsection (b):** *Employees shall neither disclose nor use for their personal interest any confidential information acquired by them in the course of their official duties.*
>
> (c) **Subsection (c):** *Employees shall treat as confidential all matters relating to investigations, internal affairs, and personnel.*

41. The Salisbury Police Department further determined that these charges against Officer Szymkowski were **sustained and supported by sufficient evidence**.

### Violation of Domestic Violence & Criminal Harassment Policy (VWA-2).

42. On or about **June 30, 2016**, it came to the attention of Salisbury Police Chief Thomas Fowler that Ofc. Szymkowski had engaged in conduct that resulted in a civilian, Destinie Berard, seeking guidance from the Georgetown Police Department regarding her options for obtaining a restraining order against him.

43. The matter was investigated, and on or about **June 30, 2016**, Lieutenant Anthony King[12] (then employed by the Salisbury Police Department) conducted a formal verbal counseling session with Ofc. Szymkowski. During this session, Ofc. Szymkowski assured department leadership that he would conduct himself in a more ethical manner both on and off duty.

44. On or about **April 13, 2018**, Destinie Berard again sought guidance from the Georgetown Police Department about obtaining a restraining order against Ofc. Szymkowski.

45. Upon learning of this development, Chief Fowler initiated a further internal investigation, which revealed that Ofc. Szymkowski failed to report that he was the subject of a police inquiry in Georgetown.

---

12 Anthony King presently serves as Chief of Police for the Town of Stratham, New Hampshire.

46. Chief Fowler concluded that Ofc. Szymkowski violated the **Department's Rules of Conduct Policy (DISC-1)** and violated the **Department's Domestic Violence & Criminal Harassment Policy (VWA-2).**

47. The Salisbury Police Department found that these violations were **supported by sufficient evidence,** and disciplinary action was imposed.

48. The Massachusetts Peace Officer Standards and Training (POST) Commission's Law Enforcement Officer Disciplinary Records database (POST Case No. A-00004033) indicates that on **April 17, 2018,** in Salisbury Police Department Internal Affairs case IA-4-2018, Officer Patrick Szymkowski was found to have committed a sustained violation of department policy and was suspended without pay for one (1) to five (5) days for **"Other Misconduct / Conduct Unbecoming."**

49. On **May 29, 2018,** Officer Szymkowski met with Salisbury Police Chief Thomas Fowler and Lieutenant Anthony King in a disciplinary hearing. Ofc. Szymkowski was offered and accepted the following resolution:

    (a) A two-day suspension from duty, which would be held in abeyance for two (2) years;

    (b) A requirement that he conduct himself in a manner that reflects most favorably on the department;

    (c) A final warning that any future violations of these same policies could result in termination of his employment with the Town of Salisbury.

50. It was further agreed that if Ofc. Szymkowski committed no further violations within two years, the two-day suspension would be reduced to a written reprimand.

## May 30, 2018 – Ofc. Szymkowski's First Retaliatory Filing for a Civil Protective Order Against Destinie Berard

51. On **May 30, 2018,** the day immediately after accepting this resolution, Ofc. Szymkowski then filed for a civil order of protection under N.H. Rev. Stat.

Ann. § 173-B (2014) against Destinie Berard in the New Hampshire Circuit Court, 10th Circuit – Family Division – Brentwood.[13]

52. Ofc. Szymkowski stated on his sworn petition to the New Hampshire court[14] that "I have suffered the following financial losses as a result of the abuse: **pending suspension at work**," and that "**I seek this petition under guidance and awareness of my Chief of Police Thomas Fowler and Executive Officer Anthony King.**"

53. The timing and content of Ofc. Szymkowski's sworn petition suggest a retaliatory intent, rather than a good-faith claim for protection, as the filing was made immediately after his disciplinary resolution and explicitly referenced his pending suspension.

54. By seeking judicial intervention in New Hampshire under the pretense of alleged financial harm resulting from his own sustained policy violations in Massachusetts, Ofc. Szymkowski's sworn statements misrepresented the circumstances surrounding his discipline, improperly shifting the blame away from his own behavior to Destinie Berard for his workplace suspension.

55. After the New Hampshire court did not issue any temporary orders on **May 30, 2018**, Ofc. Szymkowski then withdrew his request for a New Hampshire protective order.[15]

**June 6, 2018 – Disciplinary Action for Prior Unauthorized Dissemination of Confidential Information**

56. On **May 30, 2018**, Chief Thomas Fowler received an email containing: (a) three (3) Salisbury Police Department mugshots; and (b) a photograph of evidence seized in a civil marijuana case.

57. The sender of the May 30, 2018 email indicated that these photos had been sent to her by Ofc. Szymkowski in late 2014.

---

13  *See Patrick Szymkowski v. Destinie Berard*, No. 618-2018-DV-00078 (N.H. 10th Cir. Fam. Div. Brentwood filed May 30, 2018).

14  *Id.*

15  *Id.*

58. On **June 5, 2018,** Chief Fowler convened a second disciplinary meeting with Officer Szymkowski and Lieutenant Anthony King to discuss these newly discovered violations.

59. During this meeting, Ofc. Szymkowski admitted to sending the photos, acknowledged that it was extremely poor judgment, and assured department leadership that he had not sent any additional confidential photos to civilians.

60. Ofc. Szymkowski later stated in a second attempt to obtain a civil order of protection under N.H. Rev. Stat. Ann. § 173-B (2014) against Destinie Berard[16] on a second sworn petition that **on June 5, 2018** that "[Chief Thomas Fowler] and [Lt. Anthony King] had been advised of all contacts made to me by [Destinie Berard], including Q5 [i.e. suicidal ideation] threats. Decision was made that I contact her via work business line to say 'goodbye.'"

61. On **June 6, 2018,** Salisbury Police Chief Thomas Fowler issued a second disciplinary letter to Ofc. Szymkowski.

62. Chief Thomas Fowler stated in the **June 6, 2018** letter that Ofc. Szymkowski specifically violated the **Department Code of Conduct and Responsibility Policy (DISC-1),** including but not limited to a violation of **Section G, Public Statements, Subsection 4: Dissemination of Official Information.**

63. The policy states:

    (a) **Subsection (a):** *Employees shall treat as confidential that information which is confided to them personally in the course of their official duties. They shall disclose such information only as required in the proper performance of their duties.*

    (b) **Subsection (b):** *Employees shall neither disclose nor use for their personal interest any confidential information acquired by them in the course of their official duties.*

    (c) **Subsection (c):** *Employees shall treat as confidential all matters relating to investigations, internal affairs, and personnel.*

---

16 *See Patrick Szymkowski v. Destinie Berard*, No. 618-2018-DV-00084 (N.H. 10th Cir. Fam. Div. Brentwood filed June 13, 2018).

64. The Salisbury Police Department further determined that these charges against Ofc. Szymkowski were **sustained and supported by sufficient evidence.**[17]

### June 13, 2018 – Ofc. Szymkowski's Second Retaliatory Filing for a Civil Protective Order Against Destinie Berard

65. On June 13, 2018, Ofc. Szymkowski made a second attempt to obtain a civil order of protection under N.H. Rev. Stat. Ann. § 173-B (2014) against Destinie Berard in the New Hampshire Circuit Court.[18]

66. On June 13, 2018, the New Hampshire Circuit Court declined to enter any temporary orders of protection, instead ordering that "a hearing shall be scheduled to consider the evidence from both [emphasis added] parties regarding any violation of RSA 173-B by the defendant."

67. The timing and content of Ofc. Szymkowski's second sworn petition also suggest a retaliatory intent, rather than a good-faith claim for protection, as the second filing was made shortly after his second disciplinary resolution and also misrepresented the circumstances of his June 5, 2018 meeting with Chief Thomas Fowler and Lt. Anthony King.

### June 18-19, 2018 – Ofc. Szymkowski's Suspension Without Pay

68. As a direct result of Ofc. Szymkowski's multiple violations of department policy, and in accordance with the previously signed May 30, 2018, resolution agreement, **Ofc. Szymkowski was suspended without pay for two (2) days, from June 18, 2018, to June 19, 2018.**

69. During this suspension period, Ofc. Szymkowski was prohibited from acting as a police officer in any capacity and was explicitly ineligible for overtime or detail work.

70. In his June 6, 2018, disciplinary letter, Chief Fowler explicitly warned Ofc. Szymkowski that:

---

17  *See* ¶¶38-41, *supra*.

18  *See Patrick Szymkowski v. Destinie Berard*, No. 618-2018-DV-00084 (N.H. 10th Cir. Fam. Div. Brentwood filed June 13, 2018).

(a) Any future violations of the same policies could result in immediate termination of his employment with the Town of Salisbury; and

(b) Any additional infractions of department rules and regulations would result in further disciplinary action, up to and including additional unpaid suspensions or termination.

71. A copy of the June 6, 2018, disciplinary letter was placed in Ofc. Szymkowski's permanent personnel file.

**July 11, 2018 – New Hampshire Circuit Court Hearing**

72. Massachusetts state courts have observed that state domestic violence statutes can be used "as a weapon in circumstances of reciprocal hostility" between parties in family law proceedings. *Szymkowski v. Szymkowski*, 57 Mass. App. Ct. 284, 287 (2003).

73. The Fifth Circuit Court of Appeals has observed that "anyone who is willing to commit perjury can spend months or even years … planning to file a domestic violence complaint at an opportune moment in order to gain the upper hand in a [family law] proceeding. So a plaintiff willing to exaggerate past incidents or even commit perjury can have access to a responsive support group, a sympathetic court, and a litany of immediate relief." *United States v. Rahimi*, 61 F. 4th 443,465 (5th Cir. 2023) (cleaned up) (abrogated on unrelated grounds by *United States v. Rahimi*, 144 S. Ct. 1889 (2024)).

74. During the July 11, 2018, New Hampshire Circuit Court hearing, Ofc. Szymkowski testified under oath that "I became subject to an Internal Affairs investigation, which I was cleared within eight hours and back to work, without issue. I have emails to support that from my lieutenant as well."

75. During the July 11, 2018, New Hampshire Circuit Court hearing:

(a) Ofc. Szymkowski made a false statement under oath.

(b) Ofc. Szymkowski made the false statement willfully and knowingly.

(c) Ofc. Szymkowski was aware his statement was false at the time it was made. He was <u>not</u> "cleared within eight hours and back to work,

without issue." Rather, he was suspended without pay for two (2) days as a result of his own misconduct.

(d) Ofc. Szymkowsk's statement was material to the proceeding, with the potential to influence its outcome.

(e) Ofc. Szymkowsk's statement was made within the jurisdiction of a New Hampshire court proceeding.

76. Accordingly, Ofc. Szymkowsk's testimony constituted perjury under N.H. Rev. Stat. Ann. § 641:1. *See* N.H. Rev. Stat. Ann. § 641:1; *cf.* Mass. Gen. Laws ch. 268, § 1; 18 U.S.C. §§ 1621, 1623. *See also* *State v. Bisbee*, 69 A.3d 95 (N.H. 2013); *State v. Ruggiero*, 35 A.3d 616 (N.H. 2011) (interpreting N.H. Rev. Stat. Ann. § 641:1); *Commonwealth v. Lewin*, 405 Mass. 566, 542 N.E.2d 265 (1989) (construing Mass. Gen. Laws ch. 268, § 1); *Dunn v. United States*, 442 U.S. 100 (1979) (analyzing 18 U.S.C. §§ 1621, 1623).

**Later New Hampshire criminal proceedings against Destinie Berard**

77. On March 15, 2024, during a routine traffic stop in New Hampshire, Seabrook Police Officer Kassandra Kaminski arrested Destinie L. Berard. She was held in preventive detention for three days without access to counsel.

78. Ms. Berard was not brought before a judge until Monday, March 18, 2024, when a bail hearing was held before Judge Ellen Christo. This prolonged detention violated her Fourteenth Amendment right to due process and timely judicial review.

79. The arrest warrant underlying her detention stemmed from a New Hampshire civil restraining order obtained by Officer Patrick Szymkowski—an order Plaintiff asserts was fraudulently procured and retaliatory in nature.

80. As an indigent criminal defendant, Ms. Berard filed a *pro se* motion for appointment of counsel at state expense, but the New Hampshire state court refused to schedule or rule on the request, effectively forcing her to proceed without legal representation.

81. The court also denied multiple requests to continue the proceedings, thereby compounding the due process violations.

82. Faced with a looming criminal trial on November 13, 2024, and no viable legal representation, Ms. Berard had no realistic option but to appear *pro se*.

83. As a last resort, Plaintiff Dana Albrecht entered a limited emergency appearance on her behalf under N.H. Rev. Stat. § 311:1—New Hampshire's longstanding provision allowing non-attorneys to represent parties in certain limited capacities—acting essentially as a legal good Samaritan to prevent a fundamentally unfair trial.

84. Although Plaintiff's goal was to help Ms. Berard secure professional legal counsel, he was forced to assume an active advocacy role at trial to preserve her constitutional rights. During the hearing, Plaintiff successfully excluded all prosecution evidence, underscoring the critical need for legal support in criminal proceedings.

85. Despite the defendant's earlier requests for a continuance being summarily denied, Judge Dorothy Walch *sua sponte* continued the trial in favor of the prosecution after Plaintiff's courtroom success.

86. Previously, while still proceeding *pro se*, Ms. Berard had argued that the New Hampshire charges violated the double jeopardy protections of the New Hampshire Constitution, given prior prosecution by the Commonwealth of Massachusetts. See *State v. Hogg*, 118 N.H. 262 (1978) (noting that state double jeopardy standards are broader than federal ones).

87. Plaintiff filed this action to evaluate and potentially support that double jeopardy defense—making clear the relevance of the Massachusetts police records sought.

88. Plaintiff did not initially disclose his representative role on Ms. Berard's behalf precisely because the Newburyport Police Department's August 6, 2024 letter had threatened that acting on her behalf might constitute a third-party contact violation of a restraining order and expose Plaintiff or Ms. Berard to criminal liability.

89. Plaintiff feared that disclosure of his advocacy role would trigger retaliatory enforcement actions—chilling not only his advocacy but also Ms. Berard's right to legal assistance.

90. While RSA 311:1 does not authorize Plaintiff to appear formally on behalf of Ms. Berard in Massachusetts courts or federal court, that limitation is immaterial. The chilling effect and potential criminal liability threatened by the City's response would have applied equally to any individual—attorney or not—acting in support of Ms. Berard's defense.

91. The threat of arrest for merely requesting records in service of a criminal defense effort, in accordance with governing state law, raises grave constitutional concerns.

92. Public records laws exist to promote transparency, not to intimidate those who invoke them—especially in connection with criminal defense, where liberty is at stake.

93. Plaintiff's limited but lawful role as a representative under RSA 311:1 is fully protected under the First and Fourteenth Amendments. His records request was a lawful act in furtherance of constitutionally protected advocacy.

94. Plaintiff seeks this Court's intervention to ensure that individuals supporting criminal defendants—particularly indigent ones—are not chilled or threatened with prosecution merely for accessing public records critical to the defense.

## IV. Public Records Request, Denial, and Retaliatory Threat

95. Plaintiff repeats and re-alleges ¶¶12-94 above.

96. On July 11, 2024, Plaintiff submitted a lawful public records request to the Newburyport Police Department under Mass. Gen. Laws ch. 66, § 10. The request sought police reports and related records concerning prior conduct by Officer Patrick Szymkowski, including—but not limited to—Newburyport Police Report No. 22-77-AR.

97. At the time Plaintiff submitted the request, he was actively assisting Ms. Destinie Berard in connection with a pending criminal matter in New Hampshire. Plaintiff's purpose was to gather facts relevant to her defense. He did not initially disclose his representative role out of fear that it would

trigger retaliatory enforcement based on a previous threat by the Department.

98. On July 30, 2024, Plaintiff sent a clarification email to Lt. Richard Siemasko, identifying Report 22-77-AR as responsive to his original request.

99. On August 6, 2024, Lt. Siemasko—acting in his official capacity as Records Access Officer—issued a written denial citing statutory exemptions under CORI and the Public Records Law. In the same response, Lt. Siemasko warned:

> **"If you are acting as her agent or representative that would be a 3rd party contact violation of the restraining order."**

100. This message was vague and threatening. Plaintiff reasonably understood it as a retaliatory warning that the mere act of requesting a public record, if done on behalf of a criminal defendant, could result in criminal prosecution. The effect was immediate: Plaintiff curtailed further advocacy for fear of legal consequences.

101. The threat was issued under color of law and in direct response to Plaintiff's lawful exercise of First Amendment-protected activity. It was made with actual knowledge that the same records had already been deemed public in a binding order from the Massachusetts Supervisor of Records in SPR24/1359, dated May 20, 2024—an order addressed directly to Lt. Siemasko.

102. Despite the Supervisor's determination requiring disclosure of substantially identical records, the Department reasserted the same discredited exemptions and offered no explanation for its noncompliance.

103. At no point did the Department offer any factual basis for asserting that Plaintiff's request violated a restraining order, or that his actions were unlawful in any way.

104. Public records requests are not prohibited third-party contact under Massachusetts restraining order laws. Defendants' threat of prosecution was legally baseless and intended to chill Plaintiff's access and advocacy.

105. Only after initiating this lawsuit did Plaintiff learn of the prior SPR decision. He then independently obtained the requested documents through alternative means.

106. These documents include:

- **Arrest Report No. 22-77-AR,**[19] dated June 1, 2022;

- **Incident Report No. 22-327-OF,**[20] which includes a statement by Officer Szymkowski; and

- A **May 31, 2022 narrative by Officer Schyler Reilly,**[21] explaining the decision to pursue criminal charges against Ms. Berard in Massachusetts.

- An **August 12, 2022** copy of court records.[22]

107. These materials are now public. Plaintiff filed them as supplemental authority on April 24, 2025, demonstrating that Defendants' claimed exemptions lacked any legitimate legal basis.

### STANDING

### A. Plaintiff's Standing Under Article III of the U.S. Constitution

108. Plaintiff repeats and re-alleges paragraphs 1 through 107 above.

109. Plaintiff has standing to bring this action under Article III of the U.S. Constitution, which requires (1) an injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

110. Plaintiff suffered an injury in fact when Defendant Siemasko, acting under color of law, issued a retaliatory threat suggesting that Plaintiff's lawful request for public records could constitute a criminal offense—solely because Plaintiff might be assisting a criminal defendant. This threat chilled

---

19  Exhibit 6.
20  Exhibit 7.
21  Exhibit 6.
22  Exhibit 5.

Plaintiff's constitutionally protected advocacy, deterred further legal support, and caused legal uncertainty.

111. Plaintiff was, in fact, assisting Destinie Berard in a pending New Hampshire criminal prosecution, under the limited representation framework of N.H. Rev. Stat. § 311:1. The chilling effect caused by the threat of prosecution was not hypothetical; it materially impacted Plaintiff's decision-making and curtailed constitutionally protected legal and advocacy efforts.

112. The injury is traceable to the Defendants' conduct—namely, the written threat issued by the City's official Records Access Officer in response to Plaintiff's lawful request.

113. The injury is redressable through declaratory and injunctive relief prohibiting such retaliatory threats and ordering full compliance with state public records law. *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992).

## B. Plaintiff's Standing Under the First Amendment Petition Clause

114. Plaintiff's standing is independently supported by the First Amendment's Petition Clause. Plaintiff submitted a lawful request for public information—an act protected under the right to petition the government. *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–97 (2011).

115. Defendant's written threat—explicitly tying Plaintiff's public records request to potential criminal prosecution—constitutes retaliation against protected petitioning activity.

116. Plaintiff's injuries—loss of advocacy opportunity, deterrence from further requests, and fear of prosecution—are directly linked to Defendants' retaliatory conduct and are redressable through judicial intervention.

## C. Third-Party Standing — On Behalf of the Indigent Defendant

117. Plaintiff also asserts third-party standing on behalf of Ms. Destinie Berard, the indigent criminal defendant he was assisting at the time of the records request. Plaintiff and Ms. Berard have a close relationship, and there are substantial obstacles preventing her from asserting her own rights—including denial of counsel and procedural disadvantages in state court.

118. Third-party standing is recognized where **(1)** there is a close relationship between the litigant and the third party, and **(2)** the third party faces a genuine obstacle to asserting their own rights. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004).

119. Ms. Berard continues to face criminal prosecution without appointed counsel. Plaintiff was forced into a quasi-legal advocacy role because of the state court's refusal to provide effective representation. Under these circumstances, Plaintiff may raise constitutional claims on her behalf.

## D. Comparison to New Hampshire's Broader Standing Doctrine

120. While federal courts apply stricter standing rules, it is worth noting New Hampshire's constitutional structure provides broader support for citizen advocacy..See N.H. Const. Pt. I, Art. 8 (as amended 2018); *Carrigan v. N.H. Dep't of Health & Human Servs.*, 174 N.H. 362, 370 (2021).

121. While federal law ultimately governs standing in this case, New Hampshire's broader approach underscores the importance of judicial review in cases involving systemic constitutional violations.

## E. Conclusion

122. Plaintiff has established standing under Article III, the First Amendment Petition Clause, and third-party standing doctrine. Plaintiff does not seek relief on generalized grievances or abstract principles—he seeks a remedy for specific, concrete harm suffered as a direct result of Defendants' unconstitutional conduct.

123. Because Plaintiff has suffered actionable harm, the claims are justiciable and within the scope of this Court's jurisdiction. See *Ex parte Young*, 209 U.S. 123 (1908).

## MATTERS OF LAW PLEAD COMMON TO ALL COUNTS

124. Plaintiff repeats and re-alleges ¶¶1-123 above.

125. Generally speaking, to prevail on a First Amendment retaliation claim, a plaintiff must prove: "(1) he or she engaged in constitutionally protected conduct, (2) he or she was subjected to an adverse action by the defendant, and (3) the protected conduct was a substantial or motivating factor in the adverse action." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

126. Even in cases where there is a retaliatory arrest claim involving an actual arrest, the existence of probable cause is not fatal when a plaintiff is arrested in "circumstances where officers have probable cause to make arrests but typically exercise their discretion not to do so." *Nieves v. Bartlett*, 587 U.S. 391, 406 (2019). A plaintiff may even succeed on a retaliatory arrest claim despite probable cause if he or she "presents objective evidence that he [or she] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* at 407. The rationale is that "an unyielding requirement to show the absence of probable cause could pose 'a risk that some [decision makers] may exploit the arrest power as a means of suppressing speech.'" *Id.* at 406.

127. More recently, our United States Supreme Court has explained that a plaintiff is not required to present evidence of "virtually identical and identifiable comparators" who "mishandled a government petition in the same way … but were not arrested." *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

128. "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves* at 398-99.

129. To succeed on a retaliation claim, a plaintiff need not prove that the alleged retaliation subjectively chilled him from engaging in conduct protected by the First Amendment. *Grossman v. Martin*, 566 F. Supp. 3d 136, 145 (D.R.I.

2021). Rather, he need only show (1) that he engaged in protected conduct, (2) the defendant took an adverse action against him, (3) his protected conduct was a substantial or motivating factor for the adverse action, and, (4) if the claim is for retaliatory arrest, that his arrest was not supported by probable cause (unless the Nieves exception applies). *Elizabeth B.*, 675 F.3d at 43; *Nieves*, 587 U.S. at 401, 406-07. "Regarding the second element, an adverse action in a First Amendment case is one that 'viewed objectively would have a chilling effect on the plaintiff's exercise of First Amendment rights,' or that 'would deter a reasonably hardy person from exercising his or her constitutional rights.'" *Pollack v. Reg. Sch. Unit 75*, 12 F. Supp. 3d 173, 188 (D. Me. 2014) (emphasis added; citation, brackets and ellipsis omitted) (quoting *Barton v. Clancy*, 632 F.3d 9, 29 & n.19 (1st Cir. 2011), and *Elizabeth B.*, 675 F.3d at 43 n.11). "Actual deterrence need not be shown." *Grossman*, 566 F. Supp. 3d at 145 (emphasis omitted) (quoting *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)).

130. For records to be exempt from disclosure under Mass. Gen. Laws ch. 4, § 7(26)(a); ch. 41, § 97D they must constitute a report of abuse as defined by Mass. Gen. Laws ch. 209A, § 1. Prior to September 18, 2024, "Abuse" is defined as the occurrence of one or more of the following acts between family or household members: (a) attempting to cause or causing physical harm; (b) placing another in fear of imminent serious physical harm; (c) causing another to engage involuntarily in sexual relations by force, threat or duress.

131. In addition, "booking photographs and … police incident reports [are] not exempt from disclosure under the privacy exemption to the [Massachusetts] public records law, given that the subjects of the requested records [are] public officials and the public interests in disclosure substantially outweigh[] the diminished privacy interests that public officials have." *Boston Globe Media Partners, LLC v. Department of Criminal Justice Info. Servs.*, 484 Mass. 279, 282 (2020).

132. Documents relating to alleged misconduct by police officers are public records. *GateHouse Media, LLC v. City of Worcester*, No. 22-P-282 (Mass. App. Ct. Jan. 11, 2023).

## CAUSES OF ACTION

### COUNT I – Violation of Mass. Gen. Laws ch. 66, § 10

*(Violation of Massachusetts state public record law under supplemental jurisdiction pursuant to 28 U.S.C. § 1367)*

133. Plaintiff repeats and re-alleges paragraphs 1 through 132 above.

134. This claim arises from the same nucleus of operative fact as Plaintiff's federal claims under 42 U.S.C. § 1983 and forms part of the same case or controversy under Article III of the U.S. Constitution. This Court therefore has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

135. On July 11, 2024, Plaintiff submitted a lawful request under Mass. Gen. Laws ch. 66, § 10 to the Newburyport Police Department seeking public records, including Arrest Report 22-77-AR and related documents concerning Officer Patrick Szymkowski.

136. On August 6, 2024, the Department denied the request, citing the CORI statute and exemptions under G.L. c. 4, § 7(26), including Exemption (a) and Exemption (c).

137. However, more than two months earlier—on May 20, 2024—the Massachusetts Supervisor of Records issued a binding decision in Public Records Appeal SPR24/1359, addressed directly to the Department's Records Access Officer, rejecting the very same exemptions and ordering disclosure of substantially identical records.

138. The Department failed to disclose this prior ruling to Plaintiff and provided no new factual or legal justification for withholding the requested records. Instead, it repeated the same arguments already rejected by the Supervisor.

139. The Public Records Law, G.L. c. 66, § 10, creates a presumption of disclosure and places the burden on the custodian to "prove with specificity the exemption which applies." See *General Elec. Co. v. Dep't of Envtl. Prot.*, 429 Mass. 798, 801 (1999); *Dist. Att'y for the Norfolk Dist. v. Flatley*, 419 Mass. 507, 511 (1995).

140. The Arrest Report and related documents pertain to a formal criminal charge and are expressly subject to disclosure under G.L. c. 6, § 172(m), which includes police arrest logs and court records.

141. Privacy exemptions under G.L. c. 4, § 7(26)(c) do not apply to misconduct by public officials or matters of public concern, particularly where the subjects are law enforcement officers. See *Boston Globe Media Partners, LLC v. Dep't of Pub. Health*, 482 Mass. 427, 438 (2019); *GateHouse Media, LLC v. City of Worcester*, No. 22-P-282 (Mass. App. Ct. Jan. 11, 2023).

142. G.L. c. 41, § 97D does not apply. Arrest Report 22-77-AR, on its face, does not concern a report of domestic abuse as defined in G.L. c. 209A, § 1, and instead relates to a criminal charge for allegedly violating a protective order at a public memorial.

143. The Massachusetts Public Records Law expressly preserves judicial remedies. See G.L. c. 66, § 10(b); *Globe Newspaper Co. v. Police Comm'r of Boston*, 419 Mass. 852 (1995).

144. The record is further subject to mandatory disclosure under G.L. c. 6, § 172(m), which expressly includes arrest logs and police records concerning criminal charges.

145. By failing to comply with the Supervisor's binding order and by reasserting already-rejected arguments, the Department violated the Massachusetts Public Records Law.

146. Plaintiff subsequently obtained the requested documents—including Arrest Report 22-77-AR, Incident Report 22-327-OF, and a narrative statement by Officer Reilly—through alternative channels and submitted them to the Court in a Notice of Supplemental Authorities filed April 24, 2025.

## COUNT II — Violation of the First Amendment

*(Free Speech – Retaliation for Protected Expression)*

147. Plaintiff repeats and re-alleges paragraphs 1 through 146 above.

148. The First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech.

149. Plaintiff engaged in such protected speech by submitting a lawful public records request under Mass. Gen. Laws ch. 66, § 10—an act at the core of constitutionally protected advocacy and government accountability.

150. Defendant Lt. Richard Siemasko, acting under color of state law, responded by issuing a written threat that Plaintiff's request might constitute a "third-party contact violation of the restraining order"—a statement Plaintiff reasonably understood as threatening criminal prosecution.

151. The threat was made despite the absence of any legal basis for such prosecution and with actual knowledge that the records had already been ordered disclosed by the Massachusetts Supervisor of Records in SPR24/1359.

152. This official warning would deter a reasonable person from continuing to engage in protected activity and constitutes an adverse action under the First Amendment. See *Pollack v. Reg'l Sch. Unit 75*, 12 F. Supp. 3d 173, 188 (D. Me. 2014).

153. The threat was issued precisely because of Plaintiff's records request, and Plaintiff's protected activity was a substantial or motivating factor in the issuance of that threat. See *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 43 (1st Cir. 2012).

154. As a direct and proximate result, Plaintiff experienced a chilling effect on his future advocacy—delaying or refraining from further records requests or speech relating to law enforcement misconduct out of fear of legal retaliation.

155. Plaintiff has submitted public records requests to numerous municipalities throughout Massachusetts and New Hampshire. In none of those jurisdictions has he ever received a response suggesting that a lawful request could subject him to criminal prosecution. The City's conduct here is anomalous, and underscores the objectively chilling nature of the threat. See *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

156. Plaintiff continues to engage in public records advocacy and regularly assists litigants in accessing government information. He has a concrete need to file additional records requests, including in connection with ongoing matters

related to the events described herein. However, Plaintiff reasonably fears that similar threats will be issued again unless prohibited by court order.

157. Indeed, while at least one record sought (Arrest Report 22-77-AR) has subsequently been made available through alternate channels since the filing of the original complaint, the issues raised are still "capable of repetition, yet evading review." See, e.g., *So. Pac. Terminal Co. v. Int. Comm. Comm.*, 219 U.S. 498 (1911) and its progeny.

158. The First Amendment does not permit government officials to weaponize criminal statutes or restraining order laws to chill lawful public advocacy. The City's conduct violated Plaintiff's constitutional right to free expression.

159. Absent declaratory and injunctive relief, Plaintiff remains chilled from exercising core First Amendment rights. The injury is ongoing and irreparable. See *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.")

**COUNT III – Violation of the First Amendment**

*(Right to Petition the Government for Redress of Grievances – Retaliation for Public Records Request)*

160. Plaintiff repeats and re-alleges paragraphs 1 through 155 above.

161. The First Amendment guarantees the right "to petition the Government for a redress of grievances," including the use of formal legal mechanisms such as public records requests. See *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–90 (2011).

162. On July 11, 2024, Plaintiff submitted a lawful public records request under Mass. Gen. Laws ch. 66, § 10. This act constituted protected petitioning activity.

163. Defendant Lt. Richard Siemasko, acting under color of state law, responded with a written warning that Plaintiff's request might be a "third-party

contact violation of the restraining order," thereby implying potential criminal liability.

164. This statement was made despite actual knowledge that the requested documents had already been deemed disclosable in a binding May 20, 2024 ruling by the Massachusetts Supervisor of Records (SPR24/1359).

165. The threat was vague, coercive, and calculated to dissuade Plaintiff from exercising further rights to petition—chilling his ability to request records, engage in advocacy, and assist others in legal proceedings.

166. The First Amendment does not permit public officials to retaliate against individuals for seeking access to government information. The chilling of Plaintiff's petitioning efforts caused direct and ongoing injury.

167. Defendants' conduct therefore violated Plaintiff's constitutional right to petition the government for redress of grievances.

## COUNT IV – Violation of the Fourteenth Amendment

*(Due Process – Arbitrary and Vague Threat of Prosecution)*

168. Plaintiff repeats and re-alleges paragraphs 1 through 163 above.

169. The Fourteenth Amendment's Due Process Clause protects individuals from arbitrary government action and prohibits the abuse of state power that shocks the conscience.

170. On August 6, 2024, Defendant Lt. Richard Siemasko—acting under color of state law and in his official capacity as the Records Access Officer—issued a written threat suggesting that Plaintiff's lawful public records request could constitute a third-party contact violation of a restraining order if Plaintiff was acting on behalf of the defendant.

171. This threat was issued in response to Plaintiff's use of a lawful process under Massachusetts law and without any factual basis for asserting that the request violated a restraining order.

172. The Department had actual knowledge that the requested records had already been ordered disclosed by the Massachusetts Supervisor of Records in

SPR24/1359, and that no criminal conduct could plausibly be inferred from Plaintiff's request.

173. The threat was vague, coercive, and served no legitimate government purpose. It was an attempt to weaponize state criminal law to deter Plaintiff from continuing to access public records or assist a criminal defendant.

174. Substantive due process forbids such abusive conduct—especially where it impairs access to legal information and chills lawful advocacy efforts on behalf of an accused person.

175. Plaintiff was, in fact, acting in a lawful representative capacity under N.H. Rev. Stat. § 311:1 in support of Destinie Berard's criminal defense. The threat of prosecution for merely assisting her in obtaining public information raises constitutional concerns of the highest order.

176. The First Circuit has recognized that conscience-shocking behavior includes misuse of official power to intimidate, retaliate, or suppress legal rights. See *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011); *Elena v. Municipality of San Juan*, 677 F.3d 1, 7–8 (1st Cir. 2012).

177. Whether a government action "shocks the conscience" is a context-specific and fact-intensive question inappropriate for resolution prior to adjudication on the merits. See *Martinez v. Cui*, 608 F.3d 54, 65 (1st Cir. 2010).

178. Here, Plaintiff has plausibly alleged that:

- He submitted a lawful public records request;

- He did so while assisting a criminal defendant;

- The City responded by suggesting that such activity might result in criminal prosecution;

- This caused him to refrain from further protected conduct.

179. These facts, taken as true, support a plausible claim of deliberate misuse of official power—namely, issuing a baseless legal threat to silence or intimidate a public records requester engaged in lawful legal support activity.

180. Indeed, that a municipality would deliberately threaten criminal liability for an advocate engaged in lawful pursuit of public records for an indigent criminal defendant—shocks the conscience.

181. The Due Process Clause prohibits such abuse, and such claims must be adjudicated on their merits.

## COUNT V – VIOLATION OF 42 U.S.C. § 1983 (Municipal Liability – Monell Claim)

*(Against the City of Newburyport through Defendant Siemasko in his Official Capacity)*

182. Plaintiff repeats and re-alleges paragraphs 1 through 177 above.

183. A municipality may be held liable under § 1983 if the constitutional violation was caused by:

(a) an **official policy**,

(b) a **widespread custom or practice**, or

(c) an act of a **final policymaker**. *Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986).

184. Defendant Lt. Richard Siemasko, acting in his official capacity as the City's designated Records Access Officer, issued a written communication that threatened Plaintiff with possible criminal liability for submitting a lawful public records request.

185. This communication was made under color of state law, using official City letterhead, in direct response to a statutory petition under G.L. c. 66, § 10, and within the scope of Siemasko's statutorily delegated authority.

186. Under G.L. c. 66, § 6A, municipalities are required to appoint a Records Access Officer with authority to issue final responses to public records requests. Lt. Siemasko held that delegated role and acted as the final decisionmaker for the City in this context. In practice, the decisions of these RAOs—particularly in smaller municipalities like Newburyport—are not subject to internal appeal or review.

187. For *Monell* purposes, a municipality may be liable for constitutional violations resulting from decisions made by such final decisionmakers acting under statutory delegation. See *Pembaur*, 475 U.S. at 484–85; *St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988).

188. Accordingly, Lt. Siemasko's written response on August 6, 2024, was not only made under color of law, but functioned as the final municipal decision with regard to the record request. His statement constituted the City's official position and is attributable to the municipality under *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484–85 (1986), and *St. Louis v. Praprotnik*, 485 U.S. 112, 126–27 (1988).

189. In the alternative, Plaintiff alleges that the City of Newburyport maintained a custom or practice of issuing retaliatory denials and threats against individuals who file public records requests, or that the City failed to adequately train or supervise its officers regarding constitutional boundaries on such communications.

190. The City has not disavowed or corrected Lt. Siemasko's August 6, 2024 threat, nor has it issued any clarification or retraction despite public litigation and notice. This silence supports a plausible inference of ratification. See *City of St. Louis v. Praprotnik*, 485 U.S. at 127.

191. The challenged conduct directly caused violations of Plaintiff's First and Fourteenth Amendment rights, as previously alleged.

192. The City's failure to train its Records Access Officer on the legal limits of his authority, particularly the prohibition against retaliatory or coercive threats, amounts to deliberate indifference under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). See also *Young v. City of Providence*, 404 F.3d 4, 26–27 (1st Cir. 2005).

193. At a minimum, Plaintiff is entitled to discovery to determine:

- Whether the City ever trained records officers on constitutional boundaries;

- Whether similar threats were issued to others;

- And whether municipal officials ratified this conduct through silence or policy.

194. *Monell* liability does not require proof of a long pattern where the policymaker's authority is final in the relevant domain. One unconstitutional decision by a final policymaker suffices. See *Pembaur*, 475 U.S. at 484–85; *Connick v. Thompson*, 563 U.S. 51, 60–61 (2011).

195. Because the challenged conduct was carried out pursuant to delegated municipal authority, by an official empowered to act on the City's behalf, and because no corrective action was taken, the City of Newburyport is liable under § 1983.

196. Consequently, this claim should proceed to discovery under the applicable standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## <u>JURY TRIAL DEMAND</u>

197. Plaintiff demands a trial by jury on all disputed issues of fact so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

A) **Declare** that Defendants' August 6, 2024 threat of criminal prosecution in response to a lawful records request violates the First and Fourteenth Amendments to the United States Constitution;

B) **Permanently enjoin** Defendants and their successors from issuing retaliatory threats of criminal prosecution in response to records requests made under Massachusetts law;

C) **Order** Defendants to comply with the Massachusetts Supervisor of Records' decision in SPR24/1359 and release all non-exempt records;

D) **Award** nominal damages, equitable relief, and reasonable attorney's fees and costs under 42 U.S.C. § 1988;

E) **Grant** such further relief as the Court deems just and proper.


Respectfully submitted,

_____
DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com


May 13, 2025.

## CERTIFICATE OF SERVICE

I, Dana Albrecht, hereby certify that a copy of this Amended Complaint shall be served on all parties and/or counsel of record registered through the ECF system.

_____
DANA ALBRECHT

May 13, 2025