UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANA ALBRECHT,<br>                Plaintiff,<br><br>    v.<br><br>CITY OF NEWBURYPORT,<br>NEWBURYPORT POLICE DEPARTMENT,<br>LT. RICHARD J. SIEMASKO, solely in his<br>Official capacity as the records access officer<br>of the Newburyport Police Department and his<br>successors in office,<br>                Defendants. | Civil Action. 1:25-cv-10438-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
<u>AMENDED COMPLAINT</u>**

**I.    <u>INTRODUCTION</u>**

Pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), this Memorandum is submitted in support of the Defendants', City of Newburyport, Newburyport Police Department[1], and Lt. Richard J. Siemasko[2], Motion to Dismiss Plaintiffs' Amended Complaint in its entirety.

---

[1] For purposes of a Section 1983 action, a police department is "considered a non-person" and, therefore, [*8] "is not a suable entity." <u>Torrey v. FBI United States</u>, 2024 U.S. Dist. LEXIS 106977, *7-8 (D. Mass. 2024) <u>citing</u> <u>Curran v. City of Boston</u>, 777 F.Supp. 116, 120 (D. Mass. 1991).

[2] Plaintiff impleads Lt. Richard J. Siemasko solely in his official capacity as the records access officer of the Newburyport Police Department. "A suit against a public official in his official capacity is a suit against the government entity" of which the official is an agent. <u>Stuart v. City of Gloucester</u>, 2019 U.S. Dist. LEXIS 117327 (D. Mass. 2019) <u>citing</u> <u>Rosaura Bldg. Corp. v. Municipality of Mayagüez</u>, 778 F.3d 55, 62 (1st Cir. 2015). State officials, such as police officers, are not "persons" within the meaning of Section 1983 when acting in their official capacities and are, therefore, not subject to suit in federal court without the Commonwealth's consent. <u>Tyler v. Massachusetts</u>, 981 F. Supp. 2d 92, 95 (D. Mass. 2013). Accordingly, a Section 1983 suit brought against a police officer or chief of a municipal police department in his or her official capacity is a suit against the municipality itself. <u>See</u> <u>Murphy v. Town of Natick</u>, 516 F. Supp. 2d 153, 158 (D. Mass. 2007); <u>see</u> also <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985) ("[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . .").

Each of the Plaintiff's five claims relate to the same set of alleged facts. He alleges he was subjected to retaliation because he submitted public records requests to the Newburyport Police Department on July 11, 2024 seeking various records relating to Officer Patrick Szymkowski. Lt. Siemasko, the records officer responding to his request, issued a written response via email denying his request due to statutory exemptions.[3] Plaintiff also alleges that Lt. Seimasko's email contained a statement that stated if Plaintiff was acting on behalf of the defendant in a criminal or civil case, then Plaintiff's request for the report could constitute a third party contact violation of a restraining order and could result in criminal liability. Based on this and this alone, Plaintiffs bring the following counts for relief:

| | |
|---|---|
| Count I | G.L. c. 66, § 10 (*original Count V*) |
| Count II | First Amendment Retaliation for Expression (*original Count I*) |
| Count III | First Amendment Retaliation for Petitioning (*original Count II*) |
| Count IV | Fourteenth Amendment Substantive Due Process (*original Count III*) |
| Count V | Monell Claim (*original Count IV*) |

Each of Plaintiff's five claims are without merit. Further, there is a state provided process that Plaintiff has not availed himself of with regard to access to public records. His failure to follow this process also bars his claims in this case. The caption of Plaintiff's Amended Complaint alleges that the suit is against Lt. Siemasko in his official capacity but the claims for relief are those that would be brought against an individual. Thus, out of an abundance of caution, Lt. Siemasko also raises the defense of qualified immunity.

## II.    STANDARD OF REVIEW[4]

---

[3] In Massachusetts, police reports related to domestic violence, rape, and sexual assault are exempt from public disclosure under Massachusetts General Law (M.G.L.) Chapter 41, Section 97D, ensuring their confidentiality and accessibility only to specific individuals and entities.

[4] As a general rule, a court may not consider documents outside of the pleadings without converting a motion to dismiss into one for summary judgment. Watterson v. Page, 987 F.2d 1 (1st Cir. 1993). Exceptions to this rule exist, however, "for documents the authenticity of which are not disputed by the parties; for official records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. "The problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff . . . Where [the] plaintiff has

2

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action. Id. at 555. Statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action must be disregarded. Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 4 (1st Cir. 2011).

### III.    STATEMENT OF FACTS

None of the allegations of the Amended Complaint relate to injuries alleged to have been sustained by the Plaintiff himself.  Rather, he is a non-attorney who has acted in a limited statutory attorney capacity for one case related to Destinie Bernard.  Otherwise, Mr. Albrecht's Amended Complaint allegations relate to Destinie Bernard's alleged grievances.

There are other allegations that are even more attenuated.  For example, the Amended Complaint alleges that Laurie Ortolano prevailed in a case she brought in 2023.  (See Am. Compl. at ¶ 13).  This has nothing to do with Mr. Albrecht.  The Amended Complaint contains several paragraphs on "matters of law."  (See Am. Compl. at ¶¶ 124-132).  This memorandum does not restate or summarize those paragraphs in any way.  This applies to paragraphs 12, 13, 14, 22, 23, 26, 27, 28, 72, 73, 92, 104, 120, 121, 124-132, which are not well-plead factual allegations.

---

actual notice . . . and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 48 (2d Cir. 1991), cert. denied, 503 U.S. 960, 118 L. Ed. 2d 208, 112 S. Ct. 1561 (1992).

The Plaintiff's Amended Complaint also includes several paragraphs alleging Officer Szymkowski has prior instances of discipline in his personnel file. (Am. Compl. at ¶¶ 27-71). None of the prior instances of discipline involve Mr. Albrecht in any way. (*Id.*). Only one of which involve Ms. Bernard, who Mr. Albrecht represents in one case under the limited representation framework of N.H. Rev. Stat. § 311:1.

Otherwise, the Amended Complaint alleges that the Plaintiff submitted a public records request to the Newburyport Police Department on July 11, 2024, seeking various records relating to Officer Patrick Szymkowski. (Am. Compl. at ¶¶ 16, 96, 135). The records request relates to domestic matters dating back to 2018. (Am. Compl. at ¶¶ 95-107; see also Doc. No. 24-1, 24-3). On the face of Plaintiff's Amended complaint, Plaintiff has not alleged any special relationship to Officer Szymkowski or Destinie Bernard, a woman who was alleged to have been in a relationship with Officer Szymkowski at some point during or prior to 2018. Id. His Amended Complaint attempts to cure this deficiency through paragraphs 117-119, but the substantive factual allegation – that he represents her in a limited capacity through operation of N.H. Rev. Stat. § 311:1 – has not changed.

Mr. Albrecht sent an additional email to Lt. Siemasko on July 30, 2024, stating "Since I filed my original request, I now believe that the responsive records I originally asked for would include (but not be limited to) Newburyport Police Report 22-77-AR[5], should you require any further assistance in finding the responsive records more quickly." (Am. Compl. at ¶ 98; see also Doc. No. 24-2). On August 6, 2024, Lt. Siemasko, the records officer, responded to his request, issued a

---

[5] Plaintiff's Complaint does not allege how he came to be aware of a specific report number for an alleged domestic violence matter, assuming 22-78-AR exists and is a domestic violence report as Plaintiff alleges. All such reports, including the report number, are exempt from public disclosure and kept confidentially.

4

written response via email denying his request due to statutory exemptions.[6] (Am. Compl. at ¶ 99). Plaintiff's Original Complaint (Doc. No. 1) did reference Lt. Seimasko's response but selectively chose to include only parts of it in his pleading.  Plaintiff's Amended Complaint similarly only includes a small excerpt from his response, which Plaintiff then editorializes in the paragraphs that follow.  (Am. Compl. at ¶¶ 99-104).  Lt. Siemasko's response was sufficiently referenced in the original Complaint, thus, Defendants attached and incorporated it into their memorandum of law in support of their original motion to dismiss (Doc. No. 14; see also Doc. No. 14-1). Lt. Seimasko's August 6, 2024, email response has now been attached and fully incorporated as <u>Exhibit 1</u> to Plaintiff's Amended Complaint.[7]

Lt. Siemasko's August 6, 2024, email response is the only allegation specifically relating to Mr. Albrecht.

## IV. ARGUMENT

The Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. The Defendants make three principal arguments in support of their motion to dismiss Plaintiff's Amended Complaint: (1) the Plaintiff lacks standing; (2) he has not stated any viable causes of action; and (3) as an alternative argument only, Lt. Siemasko is entitled to qualified immunity.

### A. THE PLAINTIFF LACKS STANDING

Mr. Albrecht has brought a substantially similar complaint in the United States District Court for the District of New Hampshire against numerous defendants, including several New

---

[6] In Massachusetts, police reports related to domestic violence, rape, and sexual assault are exempt from public disclosure under Massachusetts General Law (M.G.L.) Chapter 41, Section 97D, ensuring their confidentiality and accessibility only to specific individuals and entities.

[7] In adjudicating a Rule 12(b)(6) motion, a district court may consider not only the complaint but also any documents annexed to it (the authenticity of which are unchallenged) and other such documents that are sufficiently referenced and/or relied upon in the complaint. See <u>Rodi v. S. New Eng. Sch. of L.</u>, 389 F.3d 5, 12 (1st Cir. 2004); <u>Beddall v. State St. Bank & Tr. Co.</u>, 137 F.3d 12, 17 (1st Cir. 1998).

Hampshire judges and court officials as well as state officials and police officers in the Towns of Seabrook, New Hampshire and Salisbury, Massachusetts. (*See Report and Recommendation of Magistrate Judge Andrea K. Johnstone*; Attached as <u>Exhibit A</u> here). In that case, Magistrate Judge Johnstone opined that Mr. Albrecht lacked standing to pursue the claims which were ostensibly based on Ms. Bernard's purported grievances.[8] The Defendants to this action incorporate and raise the same defense to this action.

The Constitution limits federal courts to deciding "cases or controversies." See U.S. Const. art. III § 2; "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).

"Under Article III of the Constitution, a plaintiff needs a 'personal stake' in the case" to have standing to sue. *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023) (*quoting TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021)). More specifically, "the plaintiff must have suffered an injury in fact — a concrete and imminent harm to a legally protected interest, like property or money — that is fairly traceable to the challenged conduct and that is likely to be redressed by the lawsuit." *Id.* (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). In addition to these constitutional considerations, prudential limitations prevent courts from "adjudicating 'questions of broad social import where no individual rights would be vindicated and . . . limit access to the federal courts to those litigants best suited to assert a particular claim.'" *Conservation Law Found. of New England, Inc.*, 950 F.2d 38, 41 (1st Cir. 1991) (alterations in original) (*quoting Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)).

---

[8] That case is still in the pleadings stage, awaiting Court action, but the Defendants anticipate the Court will dismiss the case consistent with Magistrate Judge Johnstone's Report and Recommendation.

Although "[a]n inquiry into standing must be based on the facts as they existed when the action was commenced," *Ramírez v. Sánchez Ramos*, 438 F.3d 92, 97 (1st Cir. 2006), "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Webb v. Injured Workers Pharm.*, LLC, 72 F.4th 365, 372 (1st Cir. 2023) (*quoting TransUnion*, 141 S. Ct. at 2210). The injury, however, must be "concrete and particularized" and "not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

"[S]tanding is a prerequisite to a federal court's subject matter jurisdiction. *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016). "Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but rather, must appraise their own authority to hear and determine particular cases." *Watchtower Bible & Tract Soc. of N.Y., Inc. v. Colombani*, 712 F.3d 6, 10 (1st Cir. 2013); *accord United States v. Rivera-Rodríguez*, 75 F.4th 1, 13 (1st Cir. 2023). The party who asserts jurisdiction bears the burden of demonstrating that it exists. *Woo v. Spackman*, 988 F.3d 47, 53 (1st Cir. 2021).

Mr. Albrecht fails to allege that he suffered, or is in danger of suffering, any legally cognizable injury. In fact, nor was Ms. Berard.

Mr. Albrecht also appears to claim third-party standing (Am. Compl. at ¶¶ 117-119). His claim to third-party standing is also unavailing. This argument is first premised on Mr. Albrecht's assertion of being "forced" to represent Ms. Berard, which, as described above, is belied by the facts alleged in the complaint. As especially relevant here, the Supreme Court noted that it had previously rejected an attorney's attempt to adjudicate the rights of a client under a theory of third-party standing. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) at 130 (*citing Conn v. Gabbert*, 526 U.S. 286, 292–

7

293 (1999)). The same result applies here. Plaintiff's Amended Complaint must be dismissed with prejudice and judgment against him must enter on this basis alone.

## B. THE PLAINTIFF'S CLAIMS ARE ENTIRELY WITHOUT MERIT

### 1. The Plaintiff's First Amendment Retaliation Claims (Counts II & III) Must be Dismissed

The First Amendment guarantees "freedom from official retaliation on the basis of protected speech." Mattei v. Dunbar, 217 F. Supp. 3d 367, 373 (D. Mass. 2016) (additional citation omitted). To state a First Amendment retaliation claim, a plaintiff "must allege that (1) [he] engaged in constitutionally protected conduct, (2) [he was] subjected to an adverse action by [defendant], and (3) the protected conduct was a substantial or motivating factor in the adverse action." Gattineri v. Town of Lynnfield, 58 F.4th 512, 514 (1st Cir. 2023) (additional citations and quotations omitted) (second alteration in original). The Plaintiff was not subjected to adverse action by Lt. Seimasko (in his official capacity) or by the City of Newburyport. Nor was Ms. Berard.

### 2. Plaintiffs' 42 U.S.C. § 1983 Substantive Due Process Claims (Count IV) Must Be Dismissed

For a substantive due process claim, plaintiff must meet "a further and onerous requirement" to prove "the state actions [] shock the conscience of the court." Rivera v. Rhode Island, 402 F.3d 27, 35 (1st Cir. 2005). To meet this standard, the state actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998).

"State conduct violates an individual's substantive-due-process rights when it is 'so brutal, demeaning, and harmful that it is shocking to the conscience.'" Elena v. Municipality of San Juan, 677 F.3d 1, 7-8 (1st Cir. 2012) (quoting Maymi v. P.R. Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008)); see also Freeman v. Town of Hudson, 714 F.3d 29, 40 (1st Cir. 2013) ("[Substantive due process]

8

claims are limited to government action that, by its very nature, shock[s] the conscience . . . and [are] reserve[d] . . . for truly horrendous situations." (internal quotation marks and citations omitted)); Harron v. Town of Franklin, 660 F.3d 531, 536 (1st Cir. 2011) ("[T]he test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 881 (1st Cir. 2010)).

Plaintiff's sole allegations against Lt. Seimasko (purportedly in his official capacity) and the City of Newburyport, is that Lt. Seimasko denied a public records request and cautioned that if Plaintiff was acting on behalf of the defendant in a criminal or civil case, then his request for the report could constitute a third-party contact violation of a restraining order and could result in criminal liability. Simply put, this is not a 'threat', as plaintiff alleges, and it is not a substantive due process violation. Mr. Berard was similarly not subjected to any substantive due process violations based on Defendants actions.

### 3. The Plaintiff's Monell Claim Must be Dismissed

It is well established that "[a] municipality cannot be held liable solely because it employs a tortfeasor. . . ." Monell v. Dept. of Soc. Servs. of the City of N.Y., 468 U.S. 658, 691 (1978). Instead, municipal liability "attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986). As the First Circuit has noted: "The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto respondeat superior, has set a very

9

high bar for assessing municipal liability under Monell." Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005).

"Where, as here, no official policy has been identified, a plaintiff may also obtain judgment based on practices by the municipality 'so permanent and well settled as to constitute a custom or usage with the force of law.'" Schand v. City of Springfield, 380 F. Supp. 3d 106, 131 (D. Mass. 2019) (Ponsor, J.) (quoting Monell, 439 U.S. at 691). Municipal liability "grounded upon an unconstitutional municipal custom" must meet a two-part test:

> First, the custom or practice must be attributable to the municipality. In other words, it must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice. Second, the custom must have been the cause of and the moving force behind the deprivation of constitutional rights.
>
> Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989) (emphasis added).

At the end of the day, "[t]he critical question under Monell remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one untaken by a subordinate actor?" Glisson v. Ind. Dept. of Corrections, 849 F.3d 372, 381 (7th Cir. 2017) (en banc). Plaintiff's complaint makes only a threadbare recital of the elements of a Monell claim, it does not allege facts to support the claim. On this basis, alone, the claim must be dismissed.

Plaintiff's Monell claim must also be dismissed because he has failed to state a plausible underlying claim. See Kennedy v. Town of Billerica, 617 F.3d 520, 531 (1st Cir. 2010) ("Monell can impose municipal liability only for underlying, identifiable constitutional violations attributable to official municipal policy"); Pica-Hernández v. Irizarry-Pagán, 671 F. Supp. 2d 289, 300 (D.P.R. 2009) ("With no injury inflicted[,] the Municipality cannot be subject to any liability"). Where the only substantive facts alleged against the Defendants in this case are the denial of a public records request, the Plaintiff wholly fails to state a claim for Monell liability.

### 4. The Plaintiff's G.L. c. 66, § 10 Claim (Count I) Must be Dismissed

Plaintiff does not have a viable claim under G.L. c. 66, § 10. General Laws c. 66, § 10 provides a comprehensive procedure for the release of public records. A custodian of any public record, as defined in G.L. c.4, § 7, Twenty-sixth, shall make it, or any segregable portion thereof, available to the person requesting. G.L. c.66, § 10(a). Should the custodian refuse or fail to comply, the requestor may petition the supervisor of records for a determination as to whether the record requested is public and, if so, order its dissemination. G. L. c. 66, § 10(b). Upon determination that the record is public, the supervisor "shall order the custodian of the public record to comply with the person's request. If the custodian refuses or fails to comply with any such order, the supervisor of records may notify the attorney general or the appropriate district attorney thereof who may take whatever measures he deems necessary to ensure compliance with the provisions of this section nor shall the administrative remedy provided by this section in any way limit the availability of judicial remedies otherwise available to any person requesting a public record. If a custodian of a public record refuses or fails to comply with the request of any person for inspection or copy of public record or with an administrative order under this section, the supreme judicial court or superior court shall have jurisdiction to order compliance." *Id.*

The Plaintiff has not complied with the statute. The supervisor of records did not review Lt. Seimasko's response because Plaintiff did not file a petition pursuant to the procedure within ninety days of the response. The supervisor of records never issued a decision and, thus, the superior court's jurisdiction was never implicated because there was no order to review.

Plaintiff's Amended Complaint incorporates a response from the Supervisor of Records that relates to an earlier request by Patrick Szymkowski made at some point prior to May 20, 2024, for what Plaintiff alleges were "the same records." (Am. Compl. at ¶¶ 101-102; *see also* Doc. No. 24-4).

It is not clear that Officer Szymkowski was requesting the same records. However, this memorandum will accept on the face of it that he was requesting the same records. Lt. Siemasko denied Officer Szymkowski's request as to these records. (*Id.*). Contrary to the Amended Complaint allegations, the Supervisor of Records did not order Lt. Siemasko to produce the records in his May 20th order. The Supervisor of Records clarified the applicable exemptions and ordered Lt. Siemasko to provide Officer Szymkowski with a response within 10 days that was consistent with his opinion. (*See* Doc. No. 24-4).

Plaintiff's claim also implicates the principles of exhaustion of administrative remedies and the doctrine of primary jurisdiction. Both doctrines involve courts "impos[ing] upon themselves" limitations on the exercise of jurisdiction. Cushing v. Smith, 457 A.2d 816, 821 (Me. 1983); see State ex rel. Brennan v. R.D. Realty Corp., 349 A.2d 201, 207 (Me. 1975) (explaining that the doctrine of primary jurisdiction is "a matter of judicial policy"). The exclusion principle "requires a party to proceed in the administrative . . . arena until all possible administrative remedies are exhausted before initiating action in the courts." Cushing, 457 A.2d at 821 (quoting Levesque v. Inhabitants of Eliot, 448 A.2d 876, 878 (Me. 1982)). Plaintiff failed to avail himself of the state provided administrative procedure, coming in the first instance to this Court for a ruling regarding whether Newburyport Police Report 22-77-AR is truly exempt from public disclosure. The principles of exhaustion and primary jurisdiction bar the Plaintiff from proceeding in this manner.

Even assuming Plaintiff's request was timely and the forum was appropriate, reports relating to domestic violence are exempt from public disclosure by statute. As stated in Lt. Siemasko's August 6, 2024 response, the exceptions to the Massachusetts Public Records Act permit withholding of records that are exempt from disclosure by statute. Reports involving domestic violence are required to be kept confidential. G.L. c . 4, § 7(26)(a); G.L. c. 41, § 97D. To the extent

12

that Plaintiff sought CORI information it is protected by 803 CMR 223 and 803 CMR 5.14.  Thus, report 22-77-AR is exempt from public disclosure.

Nevertheless, it appears that Mr. Albrecht has come into possession of report 22-77-AR.  His complaint does not specify how but states only "[h]e then independently obtained the requested documents through alternative means."  (Am. Compl. at ¶¶ 105-107).  The Plaintiff also alleges "These materials are now public" despite the fact that the report is very clearly a report relating to domestic violence (G.L. c. 209A), which is exempted by statute from disclosure.

### C.     DEFENDANT SIEMASKO IS ENTITLED TO QUALIFIED IMMUNITY

Police officers "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *Dist of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (*quoting Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Qualified immunity is intended to provide government officials with the ability to "reasonably anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (*quoting Davis v. Scherer*, 468 U.S. 183, 195 (1984)). It provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Davis v. Scherer*, 468 U.S. at 191; *Bonitz v. Fair*, 804 F.2d 164 (1st Cir. 1986).

The First Circuit has set out the following test for determining whether qualified immunity is applicable: "(i) whether the plaintiff's allegations, if true, establish a constitutional violation; (ii) whether the constitutional right at issue was clearly established at the time of the putative violation; and (iii) whether a reasonable officer, similarly situated to the defendant, would have understood the

13

challenged act or omission to contravene the discerned constitutional right." *Limone v. Condone*, 372 F.3d 39, 44 (1st Cir. 2004). Qualified immunity "protects all but 'the plainly incompetent and those who knowingly violate the law.'" *Pagan v. Calderon*, 448 F.3d 16, 31 (1st Cir. 2006) *quoting Malley v. Brigs*, 474 U.S. 335, 341 (1986).

The clearly established "inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) *quoting Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (*quoting Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Put another way, the law must have been sufficiently clear at the time of the alleged violation that "any reasonable official in the defendant's position would have known that the challenged conduct is illegal 'in the particular circumstances that he or she faced.'" *Rivera-Corraliza v. Morales*, 794 F.3d 208, 214-15 (1st Cir. 2015) (*quoting Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Such precision ensures that government officials are "penalize[d] . . . for violating 'bright lines,' [but] not for making 'bad guesses in gray areas.'" *Id.* at 215 (*quoting Maciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992)). This requires either controlling authority, such as a vertical precedent from either the Supreme Court or the First Circuit, or a robust consensus of cases of persuasive authority. *Dist. of Columbia v. Wesby*, 138 S. Ct. at 589.

Whether the doctrine of qualified immunity applies is a question of law, *Tatro v. Kervin*, 41 F.3d 9, 15 (1st Cir. 1994); *Whiting v. Kirk*, 960 F.2d 248, 250 (1st Cir. 1992). The doctrine is not just a defense; it protects the defendant from suit and therefore it should be raised and decided at the earliest practicable moment. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The only specific allegation that Mr. Albrecht makes in this case as it relates to Lt. Siemasko is that he responded to a public records request and within his response stated:

14

Good Morning,

I have received your public records request and I have reviewed the report that you requested. Based on reviewing your attachments you are already in possession of all the documents that you are requesting. I am assuming that the defendant in this matter has provided them to you. I have no additional documents to provide. I would caution you that the defendant in this matter has an active restraining order on her by victim in said report. If she contacts, harasses or abuses the victim that would be a violation of said order. If you are acting as her agent or representative that would be a 3rd party contact violation of the restraining order.

Additionally, had you not been in possession of the documents that you sent me I would have denied your request. I would have responded; Not only does this report fall within numerous exceptions to the public records law, because this report involves domestic violence it is actually a crime for me to release this subsequent to a public records request. I am required by law to deny your request.

1.  Exception A to the Public Records Law, allows the withholding of records that specifically or by necessary implication are exempted from disclosure by statute.

2.  Reports that include Domestic Violence cannot be released, (G.L. c. 4, § 7(26)(a); G.L. c. 41, § 97D) All communications between police officers and victims of such offenses or abuse shall not be public reports and shall be maintained by the police departments in a manner that shall assure their confidentiality. A violation of this section shall be punished by imprisonment for not more than 1 year or by a fine of not more than $1,000, or both such fine and imprisonment.

3.  Reports that contain CORI information cannot be released, pursuant to 803 CMR 223 & 803 CMR 5.14

4.  Exception C to the Public Records Law, Disclosure of this record relating to a named individual may constitute an unwarranted invasion of personnel privacy.

950 CMR 32.08, claiming that the records in question were the subjects of dispute in active litigation, administrative hearings, or mediation.

The legislature also designed the exemption to allow officers to provide an assurance of confidentiality to private citizens so that they will speak openly about matters under

investigation. Any details in witness statements, which if released create a grave risk of directly or indirectly identifying a private citizen who volunteers as a witness are indefinitely exempt. This record could not possibly be redacted in a manner to avoid identification of such witnesses/victims.

Please be advised that pursuant to 950 CMR 32.00 and G.L. c. 66, section l0A (a) you have the right to appeal this decision to the Supervisor of Public Records within 90 calendar days. Such appeal shall be in writing, and shall include a copy of the letter by which the request was made and, if available, a copy of the letter by which the custodian responded. The Supervisor shall accept an appeal only from a person who had made his or her record request in writing. Pursuant to G.L. c. 66, section lOA(c), you also have the right to seek judicial review, commencing a civil action in the superior court.

Sincerely,

Richard J. Siemasko, Esq.
Senior Lieutenant
Newburyport Police Dept.
4 Green Street
Newburyport, MA 01950
978-462-4411 ext. 1003

(*See* Doc. No. 14-1; 24-1 (same)).

Plainly, no constitutional violation has occurred. Out of an abundance of caution, Defendant Siemasko raises the defense of qualified immunity because no reasonable official in his position would believe that he was violating clearly established constitutional law by the above email response to Mr. Albrecht's request for public records.

## V.    CONCLUSION

WHEREFORE, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), City of Newburyport, Newburyport Police Department, and Lt. Richard J. Siemasko, respectfully requests that this Honorable Court dismiss Plaintiffs' Amended Complaint in its entirety. If the Court so finds that dismissal in the entirety is not proper, the Defendants request dismissal of those claims as the Court sees fit.

Defendants,
By their attorney,

*/s/ Joseph A. Padolsky*

Joseph A. Padolsky (BBO# 679725)
Douglas I. Louison (BBO# 545191)
Louison, Costello, Condon & Pfaff, LLP
Ten Post Office Square, Suite 1330
Boston, MA 02109
jpadolsky@lccplaw.com
dlouison@lccplaw.com
(617) 439-0305

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on the 31st of March 2025:

DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

*/s/ Joseph A. Padolsky*
Joseph A. Padolsky, Esquire (BBO #679725)