## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **DANA ALBRECHT,** | **)** | |
| | **)** | |
| **Plaintiff** | **)** | |
| **v.** | **)** | **Civil No. 1:25-cv-10438-ADB** |
| | **)** | |
| **CITY OF NEWBURYPORT,** *et al.*, | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## OBJECTION TO DEFENDANTS' MOTION TO DISMISS

---

# Table of Contents

I. Introduction.................................................................................3

II. Statement of Facts.......................................................................3

III. Standing under M.G.L. c. 66, § 10...............................................4

IV. Plaintiff's claim under M.G.L. c. 66 § 10 (Count I) should not be dismissed......4

    A. The City's Erroneous Assertion of Statutory Exemptions.........................4

    B. Improper Intimidation and Retaliatory Conduct....................................5

    C. Administrative Exhaustion Argument Mischaracterized by Defendants........6

    D. Defendants' Improper Inquiry into Plaintiff's Purpose.............................6

    E. Defendants' Burden of Proof Unmet..................................................7

    F. Conclusion – Count I Claims...........................................................7

V. Plaintiff's First Amendment Retaliation Claims (Counts II and III) should not be dismissed...................................................................................8

    A. Constitutionally Protected Conduct...................................................8

    B. Adverse Action............................................................................8

    C. Protected Conduct as a Substantial or Motivating Factor...........................9

    D. Conclusion – Count II and III Claims................................................9

VI. The Substantive Due Process Claim (Count IV) should not be dismissed.........10

    A. Applicable Legal Standard.............................................................10

    B. Defendants' Conduct Shocks the Conscience.......................................11

    C. Conclusion – Count IV Claim.........................................................12

VII. Plaintiff's Monell Claim should not be dismissed....................................12

    A. Legal Standard for Monell Liability..................................................12

    B. Lt. Siemasko Was a Final Policymaker..............................................12

    C. Alternative Theories of Liability Also Plausible....................................13

        Widespread Custom or Practice....................................................13

        Official Policy as Evidenced by Current Litigation Position.......................14

    D. Conclusion – Count V Claim.........................................................14

VIII. Conclusion...........................................................................15

CERTIFICATE OF SERVICE..............................................................16

## I. Introduction

1. This Memorandum is submitted in support of Plaintiff's opposition to Defendant's Motion to Dismiss (ECF No. 29) and accompanying Memorandum of Law (ECF No. 30).

## II. Statement of Facts

2. Plaintiff, Dana Albrecht, lawfully requested public records pursuant to the M.G.L Ch. 66 et seq. Specifically, Plaintiff requested:

   - All records possessed by the Newburyport Police Department related to:

     - A probable cause hearing scheduled for September 28, 2022, transferred to Peabody District Court, as referenced in an email from Salisbury Police Officer Patrick Szymkowski dated September 25, 2022.

   - All records related to a fax sent on or about September 27, 2022, from Seabrook, NH Sergeant Daniel J. Lawrence to Newbury District Court.

   - All records related to communications from Salisbury Police Chief Thomas Fowler to Officer Patrick Szymkowski dated May 23, 24, 30, and June 6, 2018.

     *See* ECF No. 24-3.

3. On August 6, 2024, Lt. Richard Siemasko, Esq. (BBO #662544), Records Access Officer for the City of Newburyport, responded via email denying the request. (ECF No. 24-1).

## III. Standing under M.G.L. c. 66, § 10

4.  Plaintiff appropriately asserts standing under the Massachusetts Public
    Records Law as the direct requester of public records unlawfully withheld.
    Massachusetts explicitly grants standing to requesters aggrieved by a denial
    of public records requests, as clearly stated under M.G.L. c. 66, § 10A(c). The
    City's contention that Plaintiff lacks standing fundamentally
    misunderstands the law, which expressly provides remedies to the requester
    in instances of noncompliance by the records custodian.

## IV. Plaintiff's claim under M.G.L. c. 66 § 10 (Count I) should not be dismissed

## A. The City's Erroneous Assertion of Statutory Exemptions

5.  Defendants incorrectly argue that the requested records were exempt from
    disclosure under domestic violence exemptions (M.G.L. c. 4, § 7(26)(a);
    M.G.L. c. 41, § 97D). This directly contradicts Lt. Siemasko's own statement
    to Attorney Jeffrey Gottfredsen (Senior Attorney, Public Records Division,
    Office of the Secretary of the Commonwealth), explicitly clarifying:

    **"This case did not involve domestic violence."** (ECF No. 31-4)

6.  Furthermore, Report 22-77-AR (ECF No. 24-6) clearly fails to meet the
    statutory definition of "abuse" under Chapter 209A, § 1 (effective September
    18, 2024), that is the version which controls, and which explicitly requires:

    • attempting to cause or causing physical harm; or,

    • placing another in fear of imminent serious physical harm; or,

    • causing another to engage involuntarily in sexual relations by force,
    threat, or duress.

7.    Report 22-77-AR describes incidental interactions at public locations, specifically noting that Ms. Berard was present at the Elks Lodge before Officer Szymkowski arrived. Far from describing statutory abuse, this scenario exemplifies the improper use of c. 209A as a retaliatory or harassing tactic, precisely as cautioned against in Massachusetts jurisprudence:

"There are distinct overtones of the use of c. 209A as a weapon in circumstances of reciprocal hostility between [prior romantic partners] and differences."
*Szymkowski v. Szymkowski*, 57 Mass. App. Ct. 284, 287 (2003).

The *Szymkowski* Court further noted explicitly:

"A judge must be alert against allowing the process to be used, as it sometimes is, 'abusively by litigants for purposes of discovery and harassment.'"
*Id.*, citing *Jones v. Gallagher*, 54 Mass. App. Ct. 883 (2002) at note 4.

8.    Moreover, the Supervisor of Records' opinion dated May 20, 2024 (ECF No. 24-4) itself was responsive to Plaintiff's records request, yet Defendants failed to provide even that clearly public document.

**B. Improper Intimidation and Retaliatory Conduct**

9.    Defendants' response included a baseless and intimidating threat that Plaintiff's lawful request, **if done as Ms. Berard's representative**, constituted a federal crime of interstate violation of a civil protective order under 18 U.S.C. § 2262(a)–(b). To clarify explicitly: 18 U.S.C. § 2262(a)–(b) criminalizes crossing state lines to violate a restraining order by contacting or threatening the protected individual. Plaintiff, a New Hampshire resident, merely requested Massachusetts public records from a Massachusetts police department. The act of lawfully requesting public documents is categorically not criminal conduct.

10. Defendants' assertion was both legally and factually unsupported. Suggesting criminal liability for a legitimate public records request represents an overt and actionable attempt to intimidate Plaintiff from exercising statutory rights.

## C. Administrative Exhaustion Argument Mischaracterized by Defendants

11. Defendants incorrectly claim Plaintiff was required to exhaust administrative remedies. The Massachusetts Public Records Law (M.G.L. c. 66, § 10A) explicitly provides administrative review as permissive, not mandatory. Subsection (c) expressly states a requester may directly commence civil action regardless of administrative remedies. Lt. Siemasko himself acknowledged Plaintiff's statutory right to immediate judicial review. (ECF No. 24-1)

12. Defendants' novel theory demanding administrative exhaustion lacks any support from statutory language or precedent.

## D. Defendants' Improper Inquiry into Plaintiff's Purpose

13. Defendants claim:

   "On the face of Plaintiff's Amended complaint, Plaintiff has not alleged any special relationship to Officer Szymkowski or Destinie Bernard, a woman who was alleged to have been in a relationship with Officer Szymkowski at some point during or prior to 2018. Id. His Amended Complaint attempts to cure this deficiency through paragraphs 117-119, but the substantive factual allegation—that he represents her in a limited capacity through operation of N.H. Rev. Stat. § 311:1—has not changed." (ECF No. 30).

14. Defendants' argument here is "much ado about nothing."

15. Massachusetts law explicitly prohibits custodians from demanding a requester's purpose except for fee waiver or commercial purpose considerations:

"The records access officer may not require the requester to specify the purpose for a request, except to determine whether the records are requested for a commercial purpose or whether to grant a request for a fee waiver."
*Boston Globe Media Partners, LLC v. Dep't of Pub. Health*, 482 Mass. 427, 447-448 (2019).

16. Furthermore:

"[T]he statute establishes 'a presumption that the record sought is public,' and places the burden on the custodian of the record 'to prove with specificity the exemption which applies.'"
*General Electric Co. v. Dep't of Envtl. Prot.*, 429 Mass. 798, 801 (1999)

17. Defendants' assertions are thus legally irrelevant and represent a fundamental misunderstanding of public records law.

**E. Defendants' Burden of Proof Unmet**

18. Defendants failed entirely to meet their burden to specifically prove applicable exemptions from disclosure (*General Electric*, 429 Mass. at 801). Instead, they engaged in clear intimidation by asserting criminal implications for a lawful request.

**F. Conclusion – Count I Claims**

19. Plaintiff's claim under M.G.L. c. 66, § 10 is well-founded and statutorily supported. Defendants' arguments grossly misconstrue applicable law, improperly threaten criminal sanctions, and fail utterly to satisfy statutory obligations to justify withholding the requested public records. Accordingly, any motion to dismiss Count I must be denied.

## V. Plaintiff's First Amendment Retaliation Claims (Counts II and III) should not be dismissed.

20. To state a First Amendment retaliation claim, a plaintiff "must allege that **(1)** [he] engaged in constitutionally protected conduct, **(2)** [he was] subjected to an adverse action by [defendant], and **(3)** the protected conduct was a substantial or motivating factor in the adverse action." *Gattineri v. Town of Lynnfield*, 58 F.4th 512, 514 (1st Cir. 2023).

## A. Constitutionally Protected Conduct

21. Plaintiff Dana Albrecht engaged in clearly protected First Amendment activity by lawfully requesting public records pursuant to Massachusetts law. Such requests are indisputably protected acts of petitioning and speech under the First Amendment.

## B. Adverse Action

22. Plaintiff (and indirectly, Ms. Berard) experienced adverse action through an explicit threat from Lt. Richard Siemasko, Esq. (BBO #662544), who, responding to Plaintiff's records request, stated:

> **"If you are acting as her agent or representative that would be a 3rd party contact violation of the restraining order."**

23. This statement constitutes an adverse action as it threatened criminal prosecution and potential incarceration under federal law (18 U.S.C. § 2262(a)–(b)), which criminalizes interstate violations of state civil protective orders, carrying penalties of up to five years' imprisonment. Plaintiff, a New Hampshire resident, merely sought public records from a Massachusetts police department. The act of lawfully requesting public documents categorically does not constitute criminal conduct.

## C. Protected Conduct as a Substantial or Motivating Factor

24. Defendants' threat was directly and explicitly tied to Plaintiff's lawful request for public records. The temporal proximity and explicit nature of Lt. Siemasko's statement indicate a direct causal link. Even in cases involving retaliatory arrest claims, the existence of probable cause does not necessarily preclude liability. The Supreme Court has clearly established that an arrest or similar adverse action made in retaliation for protected conduct violates the First Amendment, even if probable cause exists, where similarly situated individuals not engaging in protected speech were not similarly treated. *Nieves v. Bartlett*, 587 U.S. 391, 406-407 (2019).

25. Further clarifying this principle, the Supreme Court recently held that plaintiffs are not required to produce evidence of "virtually identical and identifiable comparators" who were not subject to similar adverse actions. *Gonzalez v. Trevino*, 602 U.S. 653, 658 (2024).

## D. Conclusion – Count II and III Claims

26. Plaintiff sufficiently alleges a First Amendment retaliation claim, clearly establishing engagement in protected conduct, suffering an explicit and threatening adverse action by Defendants directly related to that conduct, and demonstrating that the protected activity was a substantial or motivating factor for Defendants' unlawful actions. Therefore, any motion to dismiss Counts II and III should be denied.

**VI. The Substantive Due Process Claim (Count IV) should not be dismissed.**

**A. Applicable Legal Standard**

27. To state a substantive due process claim, Plaintiff must meet "a further and onerous requirement" to prove that "the state actions [] shock the conscience of the court." *Rivera v. Rhode Island*, 402 F.3d 27, 35 (1st Cir. 2005). The United States Supreme Court has explained:

    State actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

28. The First Circuit has repeatedly held that:

    "State conduct violates an individual's substantive-due-process rights when it is 'so brutal, demeaning, and harmful that it is shocking to the conscience.'" *Elena v. Municipality of San Juan*, 677 F.3d 1, 7-8 (1st Cir. 2012) (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 30 (1st Cir. 2008)).

29. Furthermore,

    "[Substantive due process] claims are limited to government action that, by its very nature, shocks the conscience . . . and are reserved for truly horrendous situations." *Freeman v. Town of Hudson*, 714 F.3d 29, 40 (1st Cir. 2013) (internal quotation marks and citations omitted).

    And,

    "The test is primarily concerned with violations of personal rights so severe, so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (quoting *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010)).

**B. Defendants' Conduct Shocks the Conscience**

30. Plaintiff's allegations in this case clearly meet the "shocks the conscience" standard. Here, **a licensed member of the Massachusetts bar, acting in his official capacity as Records Access Officer pursuant to <u>M.G.L. c. 66, § 6A</u>,** responded to a **routine, lawful public records request** by threatening Plaintiff with **potential federal felony liability** under <u>18 U.S.C. § 2262(a)–(b),</u> which carries up to **five years' imprisonment**, simply for requesting a public police report.

31. Such conduct is:

   • **Brutal** – threatening a federal prison sentence to chill First Amendment-protected public records advocacy.

   • **Demeaning** – implying that exercising statutory rights renders Plaintiff a criminal.

   • **Harmful** – seeking to intimidate and silence Plaintiff's lawful inquiries into public police misconduct.

32. This is not a mere technical error or bureaucratic oversight. Rather, it is official conduct:

   • **So disproportionate to any legitimate governmental need (**there is no valid purpose for threatening criminal liability for a public records request**),**

   • **So inspired by malice or sadism rather than mere carelessness**, and

   • **So egregious and outrageous** that it "shocks the conscience" of any reasonable observer.

33. As the First Circuit emphasized, substantive due process protections are reserved for "truly horrendous situations." *Freeman, 714 F.3d at 40*. Threatening a citizen with felony prosecution for exercising a clear statutory right to inspect public police records is precisely such a situation.

## C. Conclusion – Count IV Claim

34. Plaintiff has more than plausibly alleged a violation of substantive due process. Defendants' conduct is **egregious, malicious, and conscience-shocking** under binding First Circuit and Supreme Court standards. Accordingly, any motion to dismiss Count IV should be denied.

## VII. Plaintiff's Monell Claim should not be dismissed

## A. Legal Standard for Monell Liability

35. A municipality may be held liable under § 1983 if the constitutional violation was caused by:

- An official policy;

- A widespread custom or practice; **or**

- An act of a final policymaker.

*Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978)*; *Pembaur v. City of Cincinnati, 475 U.S. 469, 480–81 (1986)*.

## B. Lt. Siemasko Was a Final Policymaker.

36. Defendant Lt. Richard Siemasko, acting in his official capacity as the City's designated Records Access Officer, issued a written communication

threatening Plaintiff with potential criminal liability for submitting a lawful public records request. This communication:

- Was made under color of state law;

- Used official City email and signature block;

- Was in direct response to a statutory petition under M.G.L. c. 66, § 10;

- Fell within the scope of Lt. Siemasko's statutorily delegated authority as Records Access Officer.

37. Under M.G.L. c. 66, § 6A, municipalities are required to appoint a Records Access Officer with authority to issue final responses to public records requests. Lt. Siemasko held that delegated role and acted as the final decisionmaker for the City in this context. In practice, the decisions of these RAOs—particularly in smaller municipalities like Newburyport—are not subject to internal appeal or review within the municipality.

38. Accordingly, Plaintiff's *Monell* claim satisfies prong (c): the constitutional violation was an act of a final policymaker. This is sufficient in itself to establish municipal liability under *Monell* and *Pembaur*. Plaintiff is not required to prove an official policy or widespread custom if a final policymaker's act is at issue.

## C. Alternative Theories of Liability Also Plausible

### Widespread Custom or Practice

39. *Arguendo*, Plaintiff also asserts that it is a widespread practice of the City to unlawfully deny public records requests. At this stage, Plaintiff need not prove the practice in full, but merely plead sufficient facts to render the claim

plausible, allowing for discovery to explore the City's internal policies, customs, and training.

40. Here, Plaintiff has pleaded such facts:

- The City's official final policymaker (Lt. Siemasko) issued a "smoking gun" communication threatening criminal prosecution for a lawful public records request.

- The City's continued defense in this federal litigation maintains the denial as lawful, despite overwhelming statutory and constitutional protections.

**Official Policy as Evidenced by Current Litigation Position**

41. Moreover, as evidenced by the City's pleadings in this case (ECF No. 30), the City still maintains there were no responsive records to Plaintiff's original request. This litigation position itself evidences:

- An official policy (*Monell* prong (a)) to deny the existence of responsive public records even where documents clearly exist, and

- A widespread practice (*Monell* prong (b)) of unlawful denial, threatening statutory rights of access.

42. Indeed, the City's current position—that there are no responsive public records—directly conflicts with the existence of the documents attached to Plaintiff's amended complaint. This evidences a systemic problem within municipal policy or practice, not merely an isolated miscommunication.

**D. Conclusion – Count V Claim**

43. All that is necessary for Plaintiff to succeed on his *Monell* claim is to demonstrate that the constitutional violation was an act of a final policymaker. That has been pleaded with specificity. Additionally, Plaintiff

has plausibly alleged alternative theories of liability under *Monell* prongs **(a)** and **(b)**, warranting discovery to determine the scope of the City's official policy and customs.

44. Accordingly, any motion to dismiss Count V should be denied.

### VIII. Conclusion

45. WHEREFORE, pursuant to Federal Rules of Civil Procedure Rule 12(b)(6), Plaintiff Dana Albrecht respectfully requests that this Honorable Court deny Defendants' Motion to Dismiss in its entirety. If the Court finds that denying Defendants' Motion to Dismiss in its entirety is not proper, Plaintiff requests that only those claims the Court deems appropriate be dismissed.

Respectfully submitted,

_____
DANA ALBRECHT
*Pro Se*
131 Daniel Webster Hwy #235
Nashua, NH 03060
(603) 809-1097
dana.albrecht@hushmail.com

June 30, 2025.

## <u>CERTIFICATE OF SERVICE</u>

I, Dana Albrecht, hereby certify that a copy of this Memorandum shall be served on all parties and/or counsel of record registered through the ECF system.

_____
DANA ALBRECHT

June 30, 2025