UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DANA ALBRECHT, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 25-cv-10438-ADB |
| CITY OF NEWBURYPORT, | * | |
| NEWBURYPORT POLICE | * | |
| DEPARTMENT, and RICHARD | * | |
| SIEMASKO, solely in his official capacity | * | |
| as the records access officer of the | * | |
| Newburyport Police Department and his | * | |
| successors in office, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Dana Albrecht ("Plaintiff") brings this action against the City of Newburyport, the Newburyport Police Department, and Senior Lieutenant Richard Siemasko (together, "Defendants"), alleging violations of his federal civil rights and Massachusetts's public records law, and relying on third-party standing to raise constitutional claims on behalf of Destinie Berard. [ECF No. 24 ("Amended Complaint" or "Am. Compl.")]. Before the Court is Defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. [ECF No. 29]; see also [ECF No. 30 (supporting memorandum)]. For the reasons stated below, Defendants' motion is **GRANTED**.

I.      BACKGROUND

  A.  **Factual Background**

  The following relevant facts are taken from the Amended Complaint, the factual allegations of which the Court assumes to be true when considering a motion to dismiss.  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  As it may on a motion to dismiss, the Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice."  Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)).

  Plaintiff alleges that, in or around June 2016, Salisbury Police Chief Thomas Fowler was notified that a Salisbury police officer, Patrick Szymkowski, had engaged in conduct that resulted in Destinie Berard considering seeking a restraining order against Szymkowski.  [Am. Compl. ¶ 42].  The matter was investigated and resulted in a "formal verbal counseling session" for Szymkowski.  [Id. ¶ 43].

  In or around April 2018, Berard again sought guidance around obtaining a restraining order against Szymkowski.  [Am. Compl. ¶ 44].  Fowler initiated another internal investigation and ultimately concluded that Szymkowski had violated department policy.  [Id. ¶¶ 45–48].  In a disciplinary hearing held on May 29, 2018, Szymkowski accepted a resolution that included a two-day suspension from duty, which would be held in abeyance for two years.  [Id. ¶¶ 49–50].

  On May 30, 2018, the day after the hearing, Szymkowski filed for a protective order against Berard in New Hampshire court, stating on his accompanying sworn petition that he "ha[d] suffered . . . financial losses as a result of . . . abuse," referring to his "pending suspension at work."  [Am. Compl. ¶¶ 51–52].  He later withdrew the request for a protective order.  [Id.

¶ 55]. Plaintiff alleges that "[t]he timing and content of Ofc. Szymkowski's sworn petition suggest a retaliatory intent, rather than a good-faith claim for protection, as the filing was made immediately after his disciplinary resolution and explicitly referenced his pending suspension." [Id. ¶ 53].

On June 5, 2018, Fowler convened a disciplinary meeting with Szymkowski concerning certain conduct by Szymkowski unrelated to Berard, and the next day, Fowler issued Szymkowski a disciplinary letter. [Am. Compl. ¶¶ 56–64]. On June 13, 2018, Szymkowski again filed for a protective order against Berard. [Id. ¶ 65]. Plaintiff alleges that because this "second filing was made shortly after his second disciplinary resolution and also misrepresented the circumstances of his June 5, 2018 meeting," it likewise reflected retaliatory intent rather than a good-faith claim for protection. [Id. ¶ 67].

On March 15, 2024, Berard was arrested in New Hampshire based on a warrant stemming from a civil restraining order obtained against her by Szymkowski. [Am. Compl. ¶¶ 77, 79]. Berard "was held in preventive detention for three days without access to counsel" before her bail hearing on March 18, 2024. [Id. ¶¶ 77–78]. Berard's criminal trial began that November, and she "had no realistic option but to appear pro se" after multiple unsuccessful attempts to secure public counsel. [Id. ¶¶ 80–82]. In connection with that arrest and the proceedings that followed, Plaintiff advocated on Berard's behalf in a limited capacity pursuant to N.H. Rev. Stat. § 311.1. [Id. ¶ 83]; see also [id. ¶¶ 84–87 (describing Plaintiff's role in the proceedings against Berard)]. On July 11, 2024, while "actively assisting" Berard, [id. ¶ 97], Plaintiff submitted a public records request to the Newburyport Police Department under Mass. Gen. Laws ch. 66, § 10, seeking police reports concerning a prior arrest of Berard by Newburyport Police and "police reports and related records concerning prior conduct by"

Szymkowski.[1]  [Id. ¶¶ 16, 96]; see also [ECF No. 24-3 (Plaintiff's records request)].  On July 30, 2024, Plaintiff emailed Senior Lieutenant Richard Siemasko, the records access officer for the Newburyport Police Department, [Am. Compl. ¶ 17], to clarify that a certain record, Arrest Report No. 22-77-AR, was responsive to Plaintiff's July 11 request.  [Id. ¶ 98].

Siemasko denied Plaintiff's records request on August 6, 2024, [Am. Compl. ¶ 99], writing, in relevant part:

> I have received your public records request and I have reviewed the report that you requested.  Based on reviewing your attachments you are already in possession of all the documents that you are requesting.  I am assuming that the defendant in this matter has provided them to you.  I have no additional documents to provide.  I would caution you that the defendant in this matter has an active restraining order on her by victim in said report.  If she contacts[,] harasses or abuses the victim that would be a violation of said order.  If you are acting as her agent or representative that would be a 3rd party contact violation of the restraining order.

[ECF No. 24-1 at 1].  Siemasko also wrote that "had [Plaintiff] not been in possession of the documents" already, Siemasko still "would have denied [his] request" based on "numerous exceptions to the public records law," and further, that he was "required by law" to deny Plaintiff's request for any report involving domestic violence.  [Id. at 1–2 (citing the relevant exceptions and describing the process for appealing Siemasko's denial)].  Plaintiff alleges that Siemasko issued this denial despite his "actual knowledge that the same records had already been deemed public in a binding order from the Massachusetts Supervisor of Records . . . addressed directly to Lt. Siemasko" in relation to a different records request.  [Am. Compl. ¶ 101]; see also

---

[1] More specifically, the records sought included: (1) Arrest Report No. 22-77-AR, see [ECF No. 24-6]; (2) Incident Report No. 22-327-OF, see [ECF No. 24-7]; (3) a police narrative "explaining the decision to pursue criminal charges against Ms. Berard in Massachusetts," see [ECF No. 24-6]; and (4) a copy of court records dated August 12, 2022, see [ECF No. 24-5].  [Am. Compl. ¶ 106].

[ECF No. 24-4 (letter from Supervisor of Records)].  Plaintiff further alleges that Siemasko's "message was vague and threatening"; that Plaintiff "reasonably understood [the message] as a retaliatory warning that the mere act of requesting a public record, if done on behalf of a criminal defendant, could result in criminal prosecution"; that Siemasko's "threat was issued under color of law . . . in direct response to Plaintiff's lawful exercise of First Amendment-protected activity" and was "intended to chill Plaintiff's access and advocacy"; and that Plaintiff "immediate[ly] . . . curtailed further advocacy for fear of legal consequences."  [Am. Compl. ¶¶ 100–01, 104].  For example, "Plaintiff did not initially disclose his representative role on Ms. Berard's behalf [in the New Hampshire proceedings] precisely because the . . . August 6, 2024 letter had threatened that acting on her behalf might constitute a third-party contact violation of a restraining order and expose Plaintiff or Ms. Berard to criminal liability."  [Id. ¶ 88].

Although Plaintiff has now "independently obtained the requested documents through alternative means," [Am. Compl. ¶ 105], he brings First and Fourteenth Amendment claims under 42 U.S.C. § 1983; a Monell claim against the City of Newburyport under 42 U.S.C. § 1983; and a state claim under the Massachusetts public records statute, Mass. Gen. Laws ch. 66, § 10, all related to his efforts to secure the records through his official records request.  [Id. ¶¶ 133–96].

### B.    Procedural History

Plaintiff filed an initial complaint on February 21, 2025, [ECF No. 1], and then filed the Amended Complaint on May 13, 2025, [ECF No. 24].  Defendants filed the instant motion to dismiss the Amended Complaint on May 30, 2025, [ECF No. 29], along with a supporting memorandum, [ECF No. 30].  Plaintiff filed a notice of supplemental authorities on June 13, 2025, [ECF No. 31], and opposed the motion to dismiss on June 30, 2025, [ECF Nos. 34–35].

II.     **LEGAL STANDARD**

Defendants filed the instant motion under Federal Rule of Civil Procedure 12(b)(6) but primarily raise standing arguments, which are evaluated under Rule 12(b)(1). See Fed. R. Civ. P. 12(b)(1) (providing that a defendant may move to dismiss for lack of subject matter jurisdiction); Zauderer v. Cirrus Consulting Grp. (USA), Inc., 265 F. Supp. 3d 104, 106 (D. Mass. 2017) ("If the plaintiff lacks standing to bring a matter before the court, the court lacks jurisdiction to rule on the merits of the case."); Beaudoin v. Healey, 701 F. Supp. 3d 45, 47 (D. Mass. 2023) ("Since '[i]t is axiomatic that Article III standing is a constitutional precondition to a federal court's power to adjudicate a case,' this Court must confirm that standing exists before proceeding." (alteration in original) (citation omitted) (quoting Wine & Spirits Retailers, Inc. v. Rhode Island, 418 F.3d 36, 44 (1st Cir. 2005))), aff'd sub nom., Beaudoin v. Baker, No. 23-1989, 2025 WL 3274875 (1st Cir. Aug. 11, 2025).

The First Circuit has recognized "parallelism" between the requirements of Rule 12(b)(6) and the requirements of standing, and accordingly "applie[s] the plausibility standard applicable under Rule 12(b)(6) to standing determinations at the pleading stage." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016) (citing, inter alia, Van Wagner Bos., LLC v. Davey, 770 F.3d 33, 40 (1st Cir. 2014)). "Just as the plaintiff bears the burden of plausibly alleging a viable cause of action, so too the plaintiff bears the burden of pleading facts necessary to demonstrate standing," and "[n]either conclusory assertions nor unfounded speculation can supply the necessary heft." Id. at 730–31 (citation omitted) (first citing Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); and then citing Blum v. Holder, 744 F.3d 790, 795 (1st Cir. 2014)). The "claim-by-claim analysis required by standing doctrine demands allegations linking [the] plaintiff to each . . . species of injury" alleged by the plaintiff. Id. at 733.

6

## III.    DISCUSSION

### A.    Individual standing

To establish standing, Plaintiff (1) "must have suffered an 'injury in fact'" with (2) a "causal connection [to] the conduct complained of," meaning that "the injury [is] 'fairly . . . trace[able] to the challenged action of the defendant,'" and (3) "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (omission and third alteration in original) (first citing Allen v. Wright, 468 U.S. 737, 756 (1984); then citing Warth v. Seldin, 422 U.S. 490, 508 (1975); then citing Sierra Club v. Morton, 405 U.S. 727, 740–41 n.16 (1972); then quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990); and then quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 38–43 (1976)).  Here, the Court finds that Plaintiff does not have standing,[2] as he fails to establish traceability, and therefore does not address the other two elements.

Based on the record before it, the Court does not agree with Plaintiff that Siemasko's August 6 email can be "reasonably understood . . . as a retaliatory warning that the mere act of requesting a public record, if done on behalf of a criminal defendant, could result in criminal prosecution," [Am. Compl. ¶ 100].  Rather, the email appears to be Siemasko's attempt—in light

---

[2] Plaintiff contends that, in addition to standing under Article III, his "standing is independently supported by the First Amendment's Petition Clause," [Am. Compl. ¶¶ 114–16 (citing Borough of Duryea v. Guarnieri, 564 U.S. 379, 388–97 (2011)) (alleging that Plaintiff's "lawful request for public information [is] an act protected under the right to petition the government" and that the injury Plaintiff suffered to that right, namely "loss of advocacy opportunity, deterrence from further requests, and fear of prosecution . . . [is] directly linked" to Defendants' "retaliation against protected petitioning activity")].  This brief section contains no novel factual allegations, and ultimately fails to satisfy the "irreducible constitutional minimum" of Article III standing, Lujan, 504 U.S. at 560, for the same reasons stated herein.

of his assumption that Plaintiff and Berard might be working together[3]—to put Plaintiff on notice of the "active restraining order" filed against Berard by Szymkowski, who was referenced in the records Plaintiff had requested.  Accordingly, Siemasko informed Plaintiff that "[i]f [Berard] contact[ed], harass[ed] or abus[ed]" Szymkowski, that would constitute "a violation of said order," and if Albrecht "act[ed] as her agent or representative" in the course of that violation, then Albrecht would be committing "a 3rd party contact violation of the restraining order." [ECF No. 24-1 at 1].  Plaintiff contends that "[a]s a direct and proximate result [of Siemasko's email], Plaintiff experienced a chilling effect on his future advocacy" in that he "delay[ed] or refrain[ed] from further records requests or speech relating to law enforcement misconduct out of fear of legal retaliation." [Am. Compl. ¶ 154].  The alleged impact on Plaintiff's advocacy on behalf of Berard, however, is not fairly traceable to Siemasko's statements about a restraining order related to contact with a certain individual and unrelated to legal advocacy, notwithstanding Plaintiff's conclusion that these statements were "an attempt to weaponize state criminal law to deter Plaintiff from continuing to access public records or assist a criminal defendant," [id. ¶ 173].[4]  While "governmental action may be subject to constitutional challenge even though it has only an indirect effect on the exercise of First Amendment rights," this "in no way erode[s] the 'established principle that to entitle a private individual to invoke the

---

[3] Siemasko's email states, in relevant part, that he has "no additional documents" for Plaintiff because he "assum[es] that [Berard] has provided them" to Plaintiff already.  [ECF No. 24-1 at 1].

[4] Plaintiff further contends that Siemasko, in denying Plaintiff's records request, was knowingly ignoring a "binding determination" by the Massachusetts Supervisor of Records that had earlier "ordered disclosure of substantially the same records." [Am. Compl. ¶¶ 19–20].  This argument is unavailing, because the relevant letter from the Supervisor of Records, [ECF No. 24-4], does not appear to order the disclosure of any records.

judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action.'" Laird v. Tatum, 408 U.S. 1, 12–13 (1972) (quoting Ex parte Levitt, 302 U.S. 633, 634 (1937)); see also N.H. Right to Life Pol. Action Comm. v. Gardner, 99 F.3d 8, 14 (1st Cir. 1996) (first citing Laird, 408 U.S. at 13–14; then citing Chamber of Com. v. FEC, 69 F.3d 600, 603–04 (D.C. Cir. 1995); and then citing ACLU v. Fla. Bar, 999 F.2d 1486, 1492 (11th Cir. 1993)) ("A party's subjective fear that [he] may be prosecuted for engaging in expressive activity will not be held to constitute an injury for standing purposes unless that fear is objectively reasonable."). Because Plaintiff has not alleged that Siemasko engaged in conduct that resulted in Plaintiff sustaining or being in immediate danger of sustaining the injuries he alleges, Plaintiff lacks the individual standing necessary to bring his constitutional claims.[5]

### B.    Third-party standing on behalf of Berard

A litigant may bring a claim on behalf of a third party only if "three important criteria are satisfied: The litigant must have suffered an 'injury in fact,' thus giving him . . . a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant must have a close relation to the third party; and there must exist some hindrance to the third party's ability to protect . . . her own interests." Powers v. Ohio, 499 U.S. 400, 410–11 (1991) (citations omitted).  Here,

---

[5] The Amended Complaint does not appear to challenge the lawfulness of the exemptions themselves, but because certain allegations might be construed to do so, see, e.g., [Am. Compl. ¶ 102 (describing the exemptions as "discredited")]; [id. ¶ 107 (stating that the "claimed exemptions lacked any legitimate basis")], the Court notes that a state may constitutionally restrict access to its own records.  L.A. Police Dep't v. United Reporting Publ'g Corp., 528 U.S. 32, 39–40 (1999) (rejecting facial challenge to California statute amended to limit public access to certain arrestees' addresses, calling it "simply a law regulating access to information in the hands of the [Los Angeles] police department" and explaining that "California could decide not to give out arrestee information at all without violating the First Amendment").

Plaintiff's brief allegations asserting third-party standing on behalf of Berard, [Am. Compl. ¶¶ 117–19]; see also [id. ¶¶ 77–94 (describing criminal proceedings against Berard in New Hampshire court)], are insufficient to satisfy these criteria.  While the Amended Complaint does not explicitly spell out the particular "constitutional claims" Plaintiff seeks to "raise . . . on [Berard's] behalf," the Court, analyzing the complaint in the light most favorable to Plaintiff, will presume that the claims involve (1) "the state court's refusal to provide effective representation" to Berard during the criminal proceedings against her, [id. ¶ 119]; (2) a double jeopardy issue, see [id. ¶¶ 86–87 ("[W]hile still proceeding pro se, Ms. Berard had argued that the New Hampshire charges violated the double jeopardy protections of the New Hampshire Constitution, given prior prosecution by the Commonwealth of Massachusetts . . . . Plaintiff filed this action to evaluate and potentially support that double jeopardy defense . . . .")]; and (3) Berard's detention beginning on March 15, 2024, which Plaintiff alleges violated Berard's "Fourteenth Amendment right to due process and timely judicial review," [id. ¶ 78].

Plaintiff has not pled any concrete interest in the resolution of these issues as required by the Supreme Court's third-party standing doctrine, which is concerned with whether the litigant seeking standing has "suffer[ed] a real injury" arising from the same issues affecting the third party.  See Powers, 499 U.S. at 411–13 (holding that a criminal defendant had standing to challenge race-based exclusions of jurors on behalf of those jurors and explaining that "[t]he discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury" because "racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process' and places the fairness of a criminal proceeding in doubt" (citation omitted)); see also Singleton v. Wulff, 428 U.S. 106, 112–13 (1976) (finding that physicians had a sufficiently concrete interest in challenging, on behalf of third-party patients, a

Missouri statute excluding nonmedically indicated abortions from Medicaid benefits when the physicians alleged that they would receive Medicaid reimbursements for their work if they prevailed in their suit and when the government would "be out of pocket by the amount of the payments" such that "[t]he relationship between the parties [was] classically adverse, and there clearly exist[ed] between them a case or controversy in the constitutional sense"). Because Plaintiff has not shown that he has the requisite concrete interest in the resolution of Berard's constitutional claims, he cannot bring suit on her behalf, and the Court need not delve further into the third-party standing issue.

In light of the Court's determination that Plaintiff lacks standing to bring his constitutional claims, the Court declines to exercise supplemental jurisdiction over his remaining state claim under the Massachusetts public records statute, Mass. Gen. Laws ch. 66, § 10. See 28 U.S.C. § 1367(c) (stating that "district courts may decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction"); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); Lambert v. Fiorentini, 949 F.3d 22, 29 (1st Cir. 2020) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims." (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995))).

## IV.       CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Amended Complaint is

**GRANTED**.

> **SO ORDERED.**

March 26, 2026                                    */s/ Allison D. Burroughs*
                                                  ALLISON D. BURROUGHS
                                                  U.S. DISTRICT JUDGE